UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ICKES, voter, KEN BEYER, voter,
MACOMB COUNTY REPULICAN PARTY, by
its officers of the Executive Committee,
DONNA BRANDENBERG, US Tax Payers'          No. 22-cv-00817
candidate for the 2022 Governor of Michigan,
ELECTION INTEGRITY FUND AND FORCE,         HON. PAUL L. MALONEY
a Michigan non-profit corporation, and
SHARON OLSON, in her official capacity as   MAG. PHILLIP J. GREEN
the Clerk of Irving Township Barry County,

     Plaintiffs,                              **DEFENDANTS' CORRECTED**
                                           **RESPONSE IN OPPOSITION**
v                                          **TO PLAINTIFFS' MOTION**
                                           **FOR PRELIMINARY**
GRETCHEN WHITMER, in her official          **INJUNCTION**
capacity as the Governor of Michigan,
JOCELYN BENSON, in her official capacity as
Michigan Secretary of State and MICHIGAN
BOARD OF STATE CANVASSERS,

     Defendants.

_____

Daniel J. Hartman (P52632)
Attorney for Plaintiffs
PO Box 307
Petoskey MI 49770
(231) 348-5100
Danjh1234@yahoo.com

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Bryan W. Beach (P69681)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
_____/

**DEFENDANTS' CORRECTED RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Bryan W. Beach (P69681)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov
beachb@michigan.gov

Dated:  September 20, 2022

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents ................................................................................. i

Index of Authorities ............................................................................ iii

Concise Statement of Issue Presented .................................................. vi

Counter-Statement of Facts .................................................................. 1

    A.    Plaintiffs' Claims and Allegations ......................................... 1

    B.    Statutory Requirements of Mich. Comp. Laws § 168.795a ................... 4

    C.    Certification of Pro V&V ....................................................... 5

    D.    Procedural History ............................................................... 6

Argument .............................................................................................. 7

I.    Plaintiffs' request for a preliminary injunction should be denied because Plaintiffs do not have a substantial likelihood of success on the merits of their claims or an imminent irreparable harm. ................................. 7

    A.    Preliminary injunction factors. ............................................. 7

    B.    Plaintiffs have not shown a strong likelihood of success on the merits of their constitutional or statutory claims. ................... 8

        1.    Plaintiffs lack standing to bring any of the claims in the complaint. ...................................................................... 8

        2.    Plaintiffs' claims are barred by laches. ......................... 11

        3.    Plaintiffs' statutory and constitutional claims are without merit. ........................................................................ 13

            a.    Plaintiffs have not stated a claim for violation of Equal Protection. ........................................... 13

            b.    Plaintiffs have failed to state a claim under 50 U.S.C. § 20701. ............................................... 17

    i. Under Michigan law, local clerks—not the Secretary of State or Governor—retain election records.......................................................18

   c. Plaintiffs' claims are barred by the Eleventh Amendment. ......................................................19

   d. Plaintiffs are not entitled to a declaratory judgment holding that a statute is constitutional............................21

  C. Plaintiffs cannot show an irreparable injury absent an injunction.................................................................22

  D. The balance of harms and the public interest weigh against granting the injunction. ............................................23

Conclusion and Relief Requested...............................................................24

Certificate of Service................................................................................25

# INDEX OF AUTHORITIES

Page

## Cases

*Abbott Labs v. Gardner*, 387 U.S. 136 (1967) .............................................. 21

*Abney v. Amgen, Inc.,* 443 F.3d 540 (6th Cir. 2006) ................................... 22

*Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623 (6th Cir. 1987) .................. 21

*Alabama v. Pugh,* 438 U.S. 781 (1978) ....................................................... 19

*Alden v. Maine*, 527 U.S. 706 (1999) ......................................................... 19

*Ayyadurai v. Galvin*, 560 F Supp 3d 406 (D Mass, 2021) ........................................ 17

*Baker v. Carr*, 369 U.S. 186 (1962) .......................................................... 14

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ................................... 8

*Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154 (6th Cir. 1992) ............................ 21

*Bodine v. Elkhart Cnty. Election Bd.*, 788 F.2d 1270 (7th Cir. 1986) ....................... 16

*Bognet v. Sec'y Commonwealth of Pa.,* 980 F.3d 336 (3d Cir. Nov. 13, 2020) ........... 15

*Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001) ......................................... 7

*BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993) ...................... 22

*Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680 (6th Cir. 2000) ...................................................... 11

*Certified Restoration Dry Cleaning Network v. Tenke Corp.,* 511 F.3d 535 (6th Cir. 2007) ......................................................................................... 22

*Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D. Mich. 1969) .......................................................................................... 7

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016) ....................................... 12

*Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332 (2006)........................................ 9

*Detroit Unity Fund v. Whitmer*, 819 F. App'x 421 (6th Cir. 2020).......................... 11

*Edelman v. Jordan*, 415 U.S. 651 (1974) .................................................... 20

*Elrod v. Burns,* 427 U.S. 347 (1976) .................................................................. 22, 23

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980)......................................................... 16

*George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) ........................................................ 15

*Hamilton v. Reed*, 29 F. App'x 202 (6th Cir. 2002)..................................................... 17

*Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972) ....................................................................................................... 8

*Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261 (1997) .................................................. 20

*Johnson v. Bredesen*, 356 F. App'x 781 (6th Cir. 2009).............................................. 9

*Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980) ............................................................... 12

*Kentucky v. Graham*, 473 U.S. 159 (1985)................................................................. 20

*Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498 (1972) ......................................... 21

*Lance v. Coffman*, 549 U.S. 437 (2007)........................................................................ 9

*Leggett v W Express Inc*, No. 3:19-CV-00110, 2020 WL 1161974 (MD Tenn, January 6, 2020)................................................................................................... 17

*Lewis v. Casey*, 518 U.S. 343 (1996)........................................................................... 10

*Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941) ....................................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)................................................... 9

*Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018) .......................................................... 20

*McDonald v. Cnty. of San Diego*, 124 F. App'x 588 (9th Cir. 2005)........................... 13

*Minn. Voters All. v. Ritchie*, 720 F.3d 1029 (8th Cir. 2013) ...................................... 16

*Nken v. Holder,* 556 U.S. 418 (2009) .......................................................................... 23

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89 (1984) .............. 19, 20

*Pirtle v. Nago,* No. 22-381, 2022 WL 3915570 (D. Haw. Aug. 31, 2022).................... 8

*Rathmann Group v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989)................................... 8

*Reynolds v. Sims*, 377 U.S. 533 (1964).................................................................. 13, 14

*Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176 (9th Cir. 1988) ............................................................................................. 13

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................... 9

*State ex rel Skaggs v. Brunner*, 588 F. Supp. 2d 828 (S.D. Ohio 2008) ..................... 15

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 (2nd Cir. 1995) ................................................................................................ 8

*United States v. Hays*, 515 U.S. 737 (1995) .................................................. 14

*Wesberry v. Sanders*, 376 U.S. 1 (1964) ...................................................... 14

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ........................... 20

*Wood v. Raffensperger,* 981 F.3d 1307 (11th Cir., Dec. 5, 2020) ........................... 15

**Statutes**

Mich. Comp. Laws § 168.499(1) ................................................................ 19

Mich. Comp. Laws § 168.499(3) ................................................................ 19

Mich. Comp. Laws § 168.765(2) ................................................................ 19

Mich. Comp. Laws § 168.795a(1) ............................................................... 4

Mich. Comp. Laws § 168.810a ................................................................. 19

Mich. Comp. Laws § 168.811 .................................................................. 23

Mich. Comp. Laws § 168.496 .................................................................. 19

**Constitutional Provisions**

42 U.S.C. § 1983 ............................................................................ 1

52 U.S.C. § 20701 ............................................................... 17, 18, 19, 23

52 U.S.C. § 20703 ......................................................................... 17

52 U.S.C. § 20704 ......................................................................... 17

## CONCISE STATEMENT OF ISSUE PRESENTED

1.    Whether Plaintiffs' motion for preliminary injunctive relief should be denied where they have not demonstrated either a likelihood of success on the merits, or any imminent irreparable harm?

## COUNTER-STATEMENT OF FACTS

This case is yet another attack on the legitimacy of the results of the 2020 general election—this time, brought nearly two years after the election and on the eve of the 2022 general election.  Here, Plaintiffs consist of two individual voters, a county political party, a candidate for governor in the 2022 election, a non-profit corporation, and one township clerk.  (ECF 8, Am. Cmplt, ¶1-6, PageID.89-96.)  The only named Defendants are Secretary of State Jocelyn Benson and Governor Gretchen Whitmer, each in their official capacities, and the Board of State Canvassers.  (ECF No. 8, ¶7, PageID.97.)

### A.      Plaintiffs' Claims and Allegations

In their Amended Complaint, Plaintiffs seek a declaratory judgment that, "the Help America Vote Act of 2002 is constitutional," and that the electronic voting machines used in Michigan were not properly used.  (ECF No. 8, ¶107, 118, PageID.115, PageID.117.)  They also raise claims under 42 U.S.C. § 1983 alleging violations of their right to vote under the Equal Protection Clause.  (ECF No. 8, ¶125, PageID.117-118.)

Plaintiffs allege that the accreditation of Pro V &V—one of the testing laboratories responsible for certifying voting machines in the 2020 election—had "lapsed."  (ECF No. 8, ¶48, PageID.105.)  This allegation is based entirely on their finding a certificate of accreditation for Pro V&V on the U.S. Election Assistance Commission (EAC) website from 2015, and Plaintiffs' finding "no evidence" that Pro V&V was "recertified."  (ECF No. 8, ¶46, PageID.105.)  Plaintiffs then cite to the Voting System Test Laboratory Program Manual, asserting that "A grant of

1

accreditation is valid for a period not to exceed two years."  (ECF No. 8, ¶47, PageID.105.)  Plaintiffs thus conclude—without any further information—that in 2019, Pro V&V's accreditation "was lapsed by more than two years."  (ECF No. 8, ¶48, PageID.105.)

Plaintiffs further allege that, as a result of this lapse, the voting machines themselves are not valid and—as a consequence—the results of the 2020 election should not have been certified.  (ECF No. 8, ¶71, PageID.110.)  Plaintiffs rely upon Mich. Comp. Laws §168.795a as the basis for their claims that the voting machines in 2020 were not usable.  (ECF No. 8, ¶21-27, PageID.102.)  Plaintiffs also refer to 50 U.S.C. §§ 20701, 20703, and 20705 as providing this Court with jurisdiction over their claims.  (ECF No. 8, ¶91-103, PageID.113-115.)

The relief sought in the complaint includes:

- A temporary restraining order preventing the Defendants from:
  - "tampering with or otherwise adulterating the property and evidence regarding the 2020 election"; and
  - "interfering with and/or destroying all investigatory evidence, confidences and privileges relating to Michigan's 2020 presidential election."
- A preliminary injunction ordering the Defendants:
  - "to remove any/all election equipment for the 2022 elections that is not certified by an accredited voting system test laboratory"; and

- - "to preserve all 2020 presidential election records (electronic or otherwise) indefinitely as the 2020 presidential election is still being investigated."

- A writ of mandamus compelling the Defendants to:

  - "decertify the Michigan's (sic) 2020 presidential election and to recall Michigan's Joseph R. Biden presidential electors; and

  - order the Defendants to work together to rerun the Michigan 2020 presidential election as soon as possible, by way of a special election, with paper ballots only, on a single election **day**, with the votes being counted by hand, with members of all political parties present to observe, with a public livestream of all vote counting; and

- An award of damages "to be determined by a jury of twelve (12);"

- A permanent injunction on use of electronic voting machines that are not certified by an accredited laboratory in all future elections.

ECF No. 8, PageID.123-124.

Plaintiffs' complaint neither identifies nor defines what "evidence" regarding the 2020 election they seek to have preserved.  Plaintiffs do not specify a duration for their requested injunction, opting instead to seek an "indefinite" injunction while the 2020 election is still being investigated—but they do not specify any particular investigation, identify anyone conducting an investigation, or suggest when it might be completed.  Plaintiffs' complaint does not actually include any

allegations that the results of the 2020 general election were inaccurate or fraudulent.

**B.      Statutory Requirements of Mich. Comp. Laws § 168.795a**

Mich. Comp. Laws § 168.795a provides for the use of electronic voting machines and sets forth requirements for the use of such machines.  Section 795a(1) provides that electronic voting machines not be used unless:

1.  They be approved by the Board of State Canvassers.  The Board approves machines, "as meeting the requirements of sections 794 and 795 and instructions regarding recounts that have been issued by the Secretary of State…"

2.  That Section 797c has been complied with.  Section 797c provides that a copy of the source code of the program and any subsequent revisions or modifications of the source code be placed in an escrow account.

3.  That the machine meets 1 of two conditions in Section 795a(1):

    - The machine is certified by an independent testing authority accredited by the national association of state election directors and by the board of state canvassers; or
    - In the absence of an accredited independent testing authority, the machine is certified by the manufacturer of the voting system as meeting or exceeding the performance and test standards referenced in subsection a in a manner prescribed by the board of state canvassers.

Mich. Comp. Laws § 168.795a(1).

### C.      Certification of Pro V&V[1]

On July 28, 2022, the Bureau of Elections sent a letter to County Clerks and County Election Directors concerning correspondence that had been sent to their offices regarding the certification of voting systems in Michigan.  (Exhibit A, Clerk Letter 7/28/22.)  In that letter, the Bureau informed the clerks that claims that the voting system test laboratories (VSTL) were not certified "are not accurate."  (Ex. A, p 1.)  The letter expressly observed that, "Pro V&V was accredited by the EAC on February 24, 2015," and that "Federal law provides that EAC accreditation of a voting system test laboratory cannot be revoked unless the EAC Commissioners vote to revoke the accreditation."  (Ex. A, p 1.)  The letter further noted that, "The EAC has never voted to revoke the accreditation of Pro V&V," and that Pro V&V was issued a new accreditation certificate on February 1, 2021.  (Ex. A, p 1.)

The Bureau's letter also included a footnote reference to the EAC's website, which provided a succinct discussion of Pro V&V's certificate in 2017-2019.  (Ex A, p 2, n 4.)  The EAC's website stated, in pertinent part:

> The VSTL accreditation **does not get revoked unless the commission votes to revoke accreditation**; and by that same token, **EAC generated certificates or lack thereof do not determine the validity of a VSTL's accreditation status.** [2]

---

[1] While not pertinent to any of the Defendants' arguments in this motion, the information in this section is provided for the benefit of the Court or any members of the public who might be curious about the allegations made by Plaintiffs in their complaint.

[2] See https://www.eac.gov/sites/default/files/voting_system_test_lab/files/VSTL%20Certificates%20and%20Accreditation_0.pdf (last visited September 16, 2022).

So, the certificates upon which Plaintiffs rely do not determine the validity of Pro

V&V's accreditation.  The EAC webpage also makes the following statement

concerning Pro V&V's certificate and its compliance with program requirements:

> Due to administrative error during 2017-2019, the EAC did not issue
> an updated certificate to Pro V&V causing confusion with some people
> concerning their good standing status. Even though the EAC failed to
> reissue the certificate, Pro V&V's audit was completed in 2018 and
> again in early 2021 as the scheduled audit of Pro V&V in 2020 was
> postponed due to COVID-19 travel restrictions. Despite the challenges
> outlined above, **throughout this period, Pro V&V and SLI**
> **Compliance remained in good standing with the requirements**
> **of our program and retained their accreditation.** In addition, the
> EAC has placed appropriate procedures and qualified staff to oversee
> this aspect of the program ensuring the continued quality monitoring
> of the Testing and Certification program is robust and in place.[3]

(Emphasis added).  Plaintiffs' allegations about the accreditation of Pro V&V are

simply—but entirely—wrong, according to EAC, which is the same organization

upon which Plaintiffs attempt to base their claims.  (ECF No. 3, ¶30, 33, 38-49,

PageID.102-106.)  This information is publicly available, but Plaintiffs make no

reference to it in their Complaint.

### D.    Procedural History

Plaintiffs originally filed their complaint on September 2, 2022.  (ECF No. 1,

Complaint, PageID.1-24.)  Contemporaneously, they also filed a motion for an ex

parte Temporary Restraining Order.  (ECF No. 2, TRO Motion, PageID.29-44.)

Later the same day, Plaintiffs filed a "corrected" complaint.  (ECF No. 3, Corrected

Complaint, PageID.45-76.)  The corrections to the complaint appear to be limited to

---

[3]https://www.eac.gov/sites/default/files/voting_system_test_lab/files/VSTL%20Certifi
cates%20and%20Accreditation_0.pdf (last visited September 16, 2022).

the addition of various documents related to the certification of presidential electors, and the declaration of Attorney Russell A. Newman that providing notice to the Defendants of their motion for TRO would be "futile" because the Defendants had not "corrected" the certification of the 2020 presidential election. (ECF No. 3, PageID.75-76.)

On September 8, 2020, this Court issued an Opinion and Order denying the TRO, treating the motion for TRO as a request for preliminary injunction, and directing the Defendants to respond by Monday, September 19, 2022. (ECF No. 7, Opinion & Order, PageID.81-87.)

On September 11, 2022, Plaintiffs filed another Amended Complaint. (ECF No. 8, PageID.88-132). In this third iteration of the complaint, Plaintiffs added the Board of State Canvassers as a defendant and included additional factual allegations.

## ARGUMENT

**I.** **Plaintiffs' request for a preliminary injunction should be denied because Plaintiffs do not have a substantial likelihood of success on the merits of their claims or an imminent irreparable harm.**

### A.  Preliminary injunction factors.

Preliminary injunctive relief "is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.' " *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001). It is well settled that a preliminary injunction will be granted only upon a clear showing of substantial likelihood of success on the merits at trial and irreparable injury if the defendant is not restrained. *Corning Glass Works v. Lady Cornella, Inc.*, 305 F. Supp. 1229 (E.D.

Mich. 1969).  A movant must meet an even higher standard for relief where—as here—the injunction will alter rather than maintain the status quo or where the injunction will provide the movant with substantially all the relief sought during the trial on the merits.  *See generally Huron Valley Pub. Co. v. Booth Newspapers, Inc.*, 336 F. Supp. 659 (E.D. Mich. 1972); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2nd Cir. 1995); *Rathmann Group v. Tanenbaum*, 889 F.2d 787 (8th Cir. 1989).

Courts balance four factors in determining whether to grant a temporary or preliminary injunction:  "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction." *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012).

## B.    Plaintiffs have not shown a strong likelihood of success on the merits of their constitutional or statutory claims.

Plaintiffs' complaint is not divided into discrete counts, but their allegations suggest three essential claims in their complaint, one for violation of the Equal Protection Clause under the Fourteenth Amendment, one for violation of Mich. Comp. Laws § 168.795a, and one for violation of 50 U.S.C. § 20701.  But none of these claims is likely to succeed because of the following legal defects.

### 1.    Plaintiffs lack standing to bring any of the claims in the complaint.

As noted by this Court in its earlier Opinion and Order, Plaintiffs raise only generalized grievances and lack standing to bring claims about voting machines

used in 2020 or the possible destruction of records.  (ECF No. 7, PageID.85) (citing

*Pirtle v. Nago,* No. 22-381, 2022 WL 3915570, at *3-4 (D. Haw. Aug. 31, 2022).

Under Article III of the United States Constitution, federal courts can resolve only

"cases" and "controversies."  U.S. Const., art. III, § 2.  The case-or- controversy

requirement is satisfied only where a plaintiff has standing to bring suit.  *See*

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

Each plaintiff must demonstrate standing for each claim he seeks to press.  *Daimler*

*Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted) ("[A] plaintiff

must demonstrate standing separately for each form of relief sought.").  To establish

standing, a plaintiff must show that: (1) he has suffered an injury in fact that is

"concrete and particularized" and "actual or imminent"; (2) the injury is "fairly . . .

trace[able] to the challenged action of the defendant"; and (3) it is "likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992) (internal

quotation marks and citations omitted).

But where, as here, the only injury Plaintiffs have alleged is that state

election law has not been followed, the United States Supreme Court has made

clear that "injury is precisely the kind of undifferentiated, generalized grievance

about the conduct of government that [courts] have refused to countenance." *Lance*

*v. Coffman*, 549 U.S. 437, 442 (2007).  Because Plaintiffs "assert no particularized

stake in the litigation," Plaintiffs fail to establish injury- in-fact and thus standing

to bring their claims. *Id.*; see also *Johnson v. Bredesen*, 356 F. App'x 781, 784 (6th

Cir. 2009) (citing *Lance*, 549 U.S. at 441-42) (affirming district court's conclusion that citizens did not allege injury-in-fact to support standing for claim that the state of Tennessee violated constitutional law).  Because they cannot establish any injury-in-fact, Plaintiffs lack standing and their claims must be dismissed.

Also, Plaintiffs have alleged that, "Due to the failure on the part of Defendants to have ensured certification or otherwise caused to be certified voting machines used in the state of Michigan (sic) in the November 2020 election, Plaintiff's vote was diluted, cancelled out, and/or nullified."  (ECF No. 8, ¶126, PageID.118.)  Even assuming, for purposes of argument only, that Plaintiffs could establish injury-in-fact and causation under this theory, their constitutional claims cannot stand because Plaintiffs fail to establish redressability.

Plaintiffs fail to establish that the alleged injury of vote-dilution could be redressed by a favorable decision from this Court. Plaintiffs ask this Court to de-certify the results of the 2020 General Election in Michigan.  But an order invalidating approximately 2.8 million people would not reverse or remedy the dilution of Plaintiffs' vote.  To be sure, standing is not "dispensed in gross: A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934 (citing *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)); *Cuno*, 547 U.S. at 353 ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).  Plaintiffs' alleged injury does not entitle them to

seek their requested remedy because the harm of having one's vote invalidated or diluted is not remedied by denying millions of others their right to vote.

Moreover, it cannot be overlooked that the presidential electors that Plaintiffs seek to "recall" and hold a new election for have already performed their duties, and that Congress received and counted the electoral votes for president and vice-president on January 6 and 7, 2021.  Plaintiffs identify no legal process either to undo Congress' count of electoral votes or force Congress to count any new "electors" almost two years after the President and Vice-President have been inaugurated.

Accordingly, Plaintiffs have failed to show that their injury can be redressed by the relief they seek and thus possess no standing to pursue their equal protection claim.

### 2.    Plaintiffs' claims are barred by laches.

The defense of laches is rooted in the principle that "equity aids the vigilant, not those who slumber on their rights." *Lucking v. Schram*, 117 F.2d 160 (6th Cir. 1941).  Courts apply laches in election cases. See e.g. *Detroit Unity Fund v. Whitmer*, 819 F. App'x 421, 422 (6th Cir. 2020).  An action may be barred by the equitable defense of laches if: (1) the plaintiff delayed unreasonably in asserting their rights and (2) the defendant is prejudiced by this delay.  *Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000).  Laches applies in this case for both of these reasons.

Plaintiffs unreasonably delayed raising their claims before this Court. Plaintiffs filed this action on September 2, 2022—nearly two years after the

11

November 3, 2020 general election.  Any concerns about the application of state law prior to the election could and should have been brought far in advance of election day.  Indeed, Plaintiffs' theory is that Pro V&V's accreditation was lapsed by *more than three years* at the time of the November 2020 election.  (ECF No. 8, ¶47, PageID.105.)  Plaintiffs could have filed the claims here years before the 2020 General Election, but Plaintiffs took no action until almost two years after the election was over, votes were counted, and officials elected in the 2020 election took office.

Plaintiffs' delay is simply unreasonable.  In fact, Plaintiffs make no attempt to explain their extraordinary delay in filing this suit.  See *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (identifying the "first and most essential" reason to issue a stay of an election-related injunction is plaintiff offering "no reasonable explanation for waiting so long to file this action")).

Next, the Defendants have most certainly been prejudiced by Plaintiffs' delay.  See *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) ("As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible by his having slept on his rights.")  This is especially here, where Plaintiffs' lawsuit was filed not just at last-minute—but years after the fact. While Plaintiffs delayed, the ballots were cast; the votes were counted; the results were certified; and officials—both state and federal—have taken office and performed their duties.  Indeed, many

officials and legislators elected in 2020 are seeking re-election in the 2022 general election, which is now less than two months away.  Ballots have already been printed identifying such officers as incumbents.  While Plaintiffs' complaint appears focused on the presidential election, an injunction or order invalidating the 2020 general election results would certainly impact any and all other officers who were on the same 2020 general election ballot.  The rationale for interposing the doctrine of laches is now at its peak.  *McDonald v. Cnty. of San Diego*, 124 F. App'x 588 (9th Cir. 2005); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988)).  Plaintiffs have unreasonably delayed in raising their claims before this Court, and the consequences of their delay have prejudiced the Defendants. Their claims are, therefore, barred by the doctrine of laches and should be dismissed.

> **3.      Plaintiffs' statutory and constitutional claims are without merit.**
>
> > **a.      Plaintiffs have not stated a claim for violation of Equal Protection.**

Plaintiffs attempt to establish an equal protection claim based on the theory that, "Due to the failure on the part of Defendants to have ensured certification or otherwise caused to be certified voting machines used in the state of Michigan (sic) in the November 2020 election, Plaintiff's vote was diluted, cancelled out, and/or nullified." (ECF No. 8, ¶126, PageID.118.)

"Equal protection of the laws" means that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Bush v. Gore*, 531 U.S. 98, 104-05

(2000).  Voting rights can be impermissibly burdened "by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). "Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right [to vote]." *Reynolds*, 377 U.S. at 559 (quoting *Wesberry v. Sanders*, 376 U.S. 1, 17-18 (1964)).  "[A]ll who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be." *Reynolds*, 377 U.S. at 557-58 (quoting *Gray v. Sanders*, 372 U.S. 368, 379 (1963)).  Thus, "a law that would expressly give certain citizens a half-vote and others a full vote" would be violative of the Equal Protection Clause.  *Wesberry*, 376 U.S. at 19 (quoting *Colegrove v. Green*, 328 U.S. 549, 569 (1946)).

In some cases, vote dilution can be a cognizable injury that confers standing. *e.g.*, *United States v. Hays*, 515 U.S. 737, 744-45 (1995).  But it does not necessarily follow that all forms of vote dilution give rise to standing.  Plaintiffs have not explained, for instance, why the principles underlying standing in racial gerrymandering cases (where a state legislature or redistricting committee takes affirmative action that dilutes or restricts the votes of a specific minority population) should apply here, in a case based only upon unsubstantiated allegations of breaches of state election law by unidentified individuals at unspecified times.

In *Gill v. Whitford*, the Supreme Court recognized that plaintiffs in past vote-dilution cases had standing when their claimed injuries were "individual and personal in nature," and the plaintiffs had alleged "facts showing disadvantage to themselves as individuals." 138 S. Ct. 1916, 1929-30 (2018) (quoting *Reynolds*, 377 U.S. at 561, and *Baker v. Carr*, 369 U.S. 186, 206 (1962)).  This case is different. Plaintiffs broadly allege that their votes were diluted, but they fail to explain why or how they could be, let alone make factual allegations that they actually *were*. Simply put—diluted by whom?  Any alleged "dilution" based on supposed "decertification" of the machine would affect all voters equally, giving no particular advantage to one class or group, or any identifiable disadvantage to the Plaintiffs. Here, no group has been given preference or advantage.

Moreover, there has simply been no valuation of any person's—or group of persons'—votes as being more valuable than others.  There has been no disparate treatment, and so nothing to violate "one-person, one-vote jurisprudence."  *Bush*, 531 U.S. at 107 (citing *Gray*, 372 U.S. 368.)  See, e.g., *George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) (method for counting votes on state proposal did not violate equal protection); *State ex rel Skaggs v. Brunner*, 588 F. Supp. 2d 828 (S.D. Ohio 2008) (counting provisional ballots of otherwise eligible voters did not dilute vote). Plaintiffs' equal protection claim is not supported by any allegation that Defendants alleged "failure" caused any votes to be changed or the ultimate outcome to be altered.

15

Plaintiffs' equal protection claim simply fails as a matter of law.  *See Wood v. Raffensperger,* 981 F.3d 1307, 1314 (11th Cir., 2020) (quoting *Bognet v. Sec'y Commonwealth of Pa.,* 980 F.3d 336, 356 (3d Cir., 2020)(vacated as moot, *Bognet v. Degraffenreid,* 141 S. Ct. 2508, 209 L.Ed.2d 544 (2021)) ("'[N]o single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.'").

The Third Circuit's opinion in *Bognet*—while later vacated as moot— succinctly explains the deficiency of claims such as the one brought by Plaintiffs here:

> Contrary to the Voter Plaintiffs' conceptualization, vote dilution under the Equal Protection Clause is concerned with votes being weighed differently. See *Rucho v. Common Cause*, 139 S. Ct. 2484, 2501, 204 L. Ed. 2d 931 (2019) ("'[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry equal weight." (emphasis added)); cf. *Baten v. McMaster*, 967 F.3d 345, 355 (4th Cir. 2020), as amended (July 27, 2020) ("[N]o vote in the South Carolina system is diluted. Every qualified person gets one vote and each vote is counted equally in determining the final tally."). As explained below, the Voter Plaintiffs cannot analogize their Equal Protection claim to gerrymandering cases in which votes were weighted differently. Instead, Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots "were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity." *Trump for Pres. v. Boockvar*, 2020 U.S. Dist. LEXIS 188390, 2020 WL 5997680, at *45-46. **That is not how the Equal Protection Clause works.**

*Bognet*, 980 F.3d at 355 (emphasis added).  Similarly, the Eighth Circuit has held

that, "[t]he Constitution is not an election fraud statute."  *Minn. Voters All. v.*

*Ritchie*, 720 F.3d 1029, 1031 (8th Cir. 2013) (quoting *Bodine v. Elkhart Cnty.*

*Election Bd.*, 788 F.2d 1270, 1271 (7th Cir. 1986)).  And the Fifth Circuit has also

recognized that the Constitution, "d[oes] not authorize federal courts to be state

election monitors."  *Gamza v. Aguirre*, 619 F.2d 449, 454 (5th Cir. 1980).

Plaintiffs have failed to state a claim for a violation of the Equal Protection

Clause, and their claims fail as a matter of law.

### b.    Plaintiffs have failed to state a claim under 50 U.S.C. § 20701.

A private cause of action may not be brought for alleged violations of federal

criminal statutes.  *Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002).  Plaintiffs

seek to raise claims against Secretary Benson and Governor Whitmer pursuant to

two federal criminal statutes—52 U.S.C. §§ 20701 and 20702.  (ECF No. 8, ¶17,

PageID.99.)  By their express terms, 52 U.S.C. § 20701 and § 20702 provide that

willful violations are punishable by up to $1,000 in fines and imprisonment of up to

one year.  Neither of these criminal statutes create a private cause of action.  See,

*Ayyadurai v. Galvin*, 560 F. Supp. 3d 406, 409 (D. Mass., 2021); *Leggett v. W*

*Express Inc*, No. 3:19-CV-00110, 2020 WL 1161974, at *4 (M.D. Tenn., January 6,

2020), report and recommendation adopted sub nom.  *Leggett v. W Express Inc.*, No.

3:19-CV-00110, 2020 WL 1158140 (M.D. Tenn., March 10, 2020).

To the contrary, 52 U.S.C. § 20703 provides that records required to be

retained shall be made available upon demand to the U.S. Attorney General or his

17

representative.  There is no mention of private individuals obtaining the records.  In fact, 52 U.S.C. § 20704 actually *prohibits* the Attorney General or his representative from disclosing any record produced to the Attorney General under the statute— except to Congress, a governmental agency, or as part of a criminal proceeding— unless ordered by a court of the United States.

Because Plaintiffs have failed to plead a plausible claim for which relief could be granted them under these statutes, the claims should be dismissed in their entirety.

> ### i.      Under Michigan law, local clerks—not the Secretary of State or Governor—retain election records.

Neither the Secretary of State nor the Governor is a custodian of records or papers relating "any application, registration, payment of poll tax, or other act requisite to voting in such election," required to be preserved under 52 U.S.C. § 20701.  As this Court noted in its earlier Opinion and Order, Mich. Comp. Laws § 168.810a provides that local clerks retain possession of the ballots, ballot boxes, keys to the boxes, keys to voting machines, and other election materials as otherwise required by law, until otherwise directed by the board of county canvassers.  Mich. Comp. Laws § 168.499(1) provides that voters register to vote with the clerk of their township, city, or village.  It is the local clerk that prepares the voter identification card for the elector.  Mich. Comp. Laws § 168.499(3).  In contrast, Mich. Comp. Laws §168.496 provides that the "duties of the secretary of state" with regard to registration are simply to prepare the form used by the local clerks.  Similarly, Mich. Comp. Laws § 168.765(2) provides that the local clerk

18

keeps absent voter ballot applications.  Plaintiff Sharon Olson identifies herself as

the Irving Township Clerk (ECF No. 8, ¶6, PageID.96), and so she should already

know that clerks are responsible for maintaining these records.

Plaintiffs have failed to establish that the Secretary of State or—in

particular—the Governor have any records that are subject to retention under 52

U.S.C. § 20701.  Their claims, therefore, fail as a matter of law.

### c.     Plaintiffs' claims are barred by the Eleventh Amendment.

The United States Constitution, Amendment XI, provides:

> The judicial power of the United States shall not be construed to
> extend to any suit in law or equity, commenced or prosecuted against
> one of the United States by citizens of another state, or by citizens or
> subjects of any foreign state.

The Eleventh Amendment to the United States Constitution prevents a state

from being sued in federal court without its consent.  *Alabama v. Pugh,* 438 U.S.

781 (1978).  An unconsenting state is immune from lawsuits brought in federal

court by its own citizens, as well as by citizens of another state.  *Alden v. Maine*, 527

U.S. 706, 712-713 (1999).  The Eleventh Amendment is a constitutional restriction

on the federal judicial power "based in large part on 'the problems of federalism

inherent in making one sovereign appear against its will in the courts of the other.'"

*Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984).

The Supreme Court has consistently ruled that the Eleventh Amendment is a

bar to lawsuits against states, state agencies or state departments unless

specifically overridden by an act of Congress, or unless the state has consented to be

sued.  *Pennhurst, Id.*; *Alabama v. Pugh*; *Edelman v. Jordan*, 415 U.S. 651

(1974).  The bar against suits for money damages also applies when State officials are sued for damages in their official capacities.  *Maben v. Thelen*, 887 F.3d 252, 270-271 (6th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).  Further, state officials acting in their official capacity are also not "persons" under § 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

Applying this well-established framework, Plaintiffs' claims against the Secretary of State, Governor, and Board of State Canvassers are barred by the Eleventh Amendment.  Further, it is far from clear whether Plaintiffs' requested relief is actually prospective in nature, as opposed to retroactive.  See *Edelman v. Jordan*, 415 U.S. 651, 666-667 (1974).  Plaintiffs do not seek to require state officials to conform their conduct to the law in the future, but rather to retroactively *undo* the actions of state officials, and—indeed—to substitute new actions in their place, in effect having this Court make determinations in place of state officials.  Such a request is not consistent with long-established principles of state sovereignty.  As a result, the *Ex Parte Young* exception to the Eleventh Amendment does not apply to these claims.

Moreover, even if Plaintiffs' claims for injunctive and declaratory relief had been properly pleaded, they would still be barred by the Eleventh Amendment.  "To interpret *Young* to permit a federal court-action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle…that Eleventh Amendment immunity represents a real

limitation on a federal court's federal-question jurisdiction." *Idaho v. Coeur D'Alene Tribe,* 521 U.S. 261, 270 (1997).  Federal courts cannot order state officials to conform to state law.  See *Pennhurst*, 465 U.S. at 106.  Here, Plaintiffs' complaint is entirely predicated on the election being conducted contrary to Michigan law.  The Eleventh Amendment bars this Court's exercise of judicial power to issue Plaintiffs' requested relief.

Lastly, Plaintiffs have expressly named Secretary of State Benson and Governor Whitmer in their official capacities, and also named the Board of State Canvassers, which is a state entity.  But, in their request for relief, Plaintiffs have called for "an award of damages."  Such claims are clearly barred by the Eleventh Amendment and must be dismissed.

### d. Plaintiffs are not entitled to a declaratory judgment holding that a statute is constitutional.

Plaintiffs' complaint includes a curious claim for a declaratory judgment, "that the Help America Vote Act of 2002 is constitutional."  (ECF No. 8, PageID.115-116.)  However, the constitutionality of that Act has not been challenged or impugned by the Defendants.  Federal courts have limited jurisdiction.  *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987).  Before the court may consider any compliant, it must first determine that there is a case or controversy ripe for review.  *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992).

The U.S. Supreme Court has set a two-part test for ripeness, requiring courts to evaluate both the fitness of the issues for judicial decision and the hardship to

the parties of withholding court consideration. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507 (1967). The first part of the test has been explained as meaning whether the issues are fit for judicial decision--that is, whether there is a present case or controversy between the parties, see *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972); *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977, 28 USPQ2d 1124, 1126 (Fed. Cir. 1993). Because the Defendants have not disputed the constitutionality of the Help America Vote Act, there is no case or controversy and Plaintiffs' request for a declaratory judgment is not ripe.

### C. Plaintiffs cannot show an irreparable injury absent an injunction.

In considering issuing an injunction, courts must consider whether the plaintiff will suffer irreparable injury without the injunction. *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). "To demonstrate irreparable harm, the plaintiffs must show that . . . they will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Irreparable harm may also exist where a plaintiff can demonstrate a substantial likelihood of success on the merits of the plaintiff's claim that his or her constitutional right has or will imminently be violated. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976).

But here, Plaintiffs' complaint fails to establish any imminent, irreparable harm. As pointed out in this Court's earlier order, even if the retention period under 52 U.S.C. § 20701 is twenty-two months, state law requires poll lists,

22

statements, tally sheets, absent voters' return envelopes, absent voters' records, and other returns made by the inspectors of election of the several precincts to be retained for two years following the election.  Mich. Comp. Laws § 168.811.  In fact, Section 811 further provides that some records—including registration and absent voter applications—are to be kept for six years following the election.  As such, there is no "imminent" risk of any records being destroyed before the merits of Plaintiffs' claims may be heard.  Moreover, Plaintiffs have had nearly two years to gather and collect any "evidence" to support their claimed investigation, and they fail to articulate or identify any efforts they have taken to review such records until now.  Simply put, Plaintiffs fail to explain what will happen in the next few weeks that has not or could not have occurred in the past twenty-two months.

Thus, Plaintiffs cannot demonstrate a sufficient actual and imminent injury for purposes of showing irreparable harm.  Furthermore, as discussed above, Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their constitutional and statutory claims.  *Elrod*, 427 U.S. at 373-374.  Because Plaintiffs have not demonstrated irreparable harm, their motion for injunctive relief must be denied.

**D.   The balance of harms and the public interest weigh against granting the injunction.**

Here, the balance of harms and public interest factors weigh in Defendant's favor.  These factors "merge when the Government is the opposing party."  *Nken v. Holder,* 556 U.S. 418, 435 (2009).

Here, Plaintiffs seek to enjoin the Secretary of State and Governor to retain or "preserve" records that are not in their possession, custody, or control. Compliance with such an order would require that the Defendants first affirmatively gather such documents from each of the county, city, and township clerks throughout the state.  The burden that would impose would be substantial, but Plaintiffs have offered no explanation why they could not obtain the records they seek themselves by simply making an appropriate request to the local clerks. Further, as argued above regarding laches, Plaintiffs' efforts to cloud or disparage the results of the 2020 election affects the ongoing 2022 general election.  The public interest weighs in favor of judicial restraint.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants Secretary of State Jocelyn Benson, Governor Gretchen Whitmer, and the Board of State Canvassers respectfully request that this Court deny Plaintiffs' motion for a preliminary injunction, together with any other relief the Court determines to be appropriate under the circumstances.

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Bryan W. Beach (P69681)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

beachb@michigan.gov

Dated:  September 20, 2022

### CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2022, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General

25