**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN GRAND RAPIDS DIVISION**

| | |
|---|---|
| **JASON ICKES, voter**<br><br>**KEN BEYER, voter**<br><br>**MACOMB COUNTY REPUBLICAN PARTY by its officers of the Executive Committee,**<br><br>**DONNA BRANDENBURG, US Tax Payers Candidate for the 2022 Governor of Michigan,**<br><br>**ELECTION INTEGRITY FUND AND FORCE, a Michigan non-profit corporation, AND**<br><br>**SHARON OLSON, in her official capacity as the Clerk of Irving Township Barry County**<br>**Plaintiffs,**<br>**v.**<br><br>**GRETCHEN WHITMER, in her official capacity as the Governor of Michigan, and**<br><br>**JOCELYN BENSON, in her official capacity as Michigan Secretary of State**<br><br>**MICHIGAN BOARD OF STATE CANVASSERS,**<br>**Defendants.** | **Civil Action No. : 22-cv-00817**<br><br>**HON. PAUL L. MALONY**<br><br>**MAG. PHILLIP J. GREEN**<br><br>**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; CERTIFICATION** |
| **Daniel J. Hartman (P52632)**<br>**Attorney for Plaintiffs**<br>**PO BOX 307**<br>**Petoskey, MI 49770**<br>**(231) 348-5100**<br>**Danjh1234@yahoo.com** | **HEATHER S. MEINGAST (P55439)**<br>**Erik A Grill (P64713)**<br>**Bryan W. Beach (P69681)**<br>**Asst. Attorneys General**<br>**PO BOX 30736**<br>**LANSING, MI 48909** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' TO MOTION TO DISMISS; CERTIFICATION OF COMPLIANCE**

# Table of Contents

**INTRODUCTION**.......... 4
**STATEMENT OF FACTS**.......... 4
**STATEMENT OF APPLICABLE LAW**.......... 5
**ARGUMENT**.......... 11
**1. Whether the plaintiffs have standing on any of the claims in the complaint** .......... 11
**2. Whether the plaintiffs are barred by latches.** .......... 11
**3. Whether the plaintiffs statutory and constitutional claims are without merit**.......... 12
**a. Equal Protection**.......... 12
**b. 50 USC 20701**.......... 15
**Whether it is relevant who retains the records under Michigan law when the records necessary to demonstrate an audit trail for this lawsuit is relevant-especially when the Secretary of State has under threat of prosecution ordered the destruction of the digital audit logs from the tabulators.**.......... 16
**c. Whether any claims of the plaintiff are barred by the 11th Amendment**.......... 17
**IV. Whether the plaintiffs are entitled to declaratory relief**.......... 17
Conclusion .......... 17

# TABLE OF AUTHORITIES

## Cases

*Bush v Gore*, 531 US 98 (2000 ... 11

## Statutes

42 USC 15481.SEC. 301 ... 3, 4, 11
42 USC 15484.SEC. 304 ... 4, 5
Help America Vote Act of 2022 ... 2, 3, 4, 6
MCL 168.509n ... 6
MCL 168.764a ... 5
MCL 168.795 ... 5
MCL 168.795a ... 5
MCL 168.798c ... 13
MCL 168.803 ... 11
Public Act 116 of 1956 (MCL 168.1 et seq) ... 2

**INTRODUCTION**

This case is not about the 2020 election. The case is simply whether the electronic voting systems in Michigan are ‘qualified” under Michigan law to run an election. The qualifications in the federal Help America Vote Act of 2022 are also set by the Michigan Election Code which is Public Act 116 of 1956 (MCL 168.1 et seq). In general, Michigan adopted the federal standards for a voting system provided by the US Election Assistance Commission.

The Secretary of State has failed to ensure that the machines were and are qualified to run the elections-a duty imposed on the Secretary of State by law.

The laws are designed to protect the purity of Michigan elections by meeting certain security and transparency standards.

While the defendants argue this case is about an attack on the legitimacy of the 2020 election it is a basic question seeking declaratory, injunctive, and mandamus relief on the issue of what is required by federal standards and Michigan law for an electronic voting system to be used to conduct a Michigan election.

**STATEMENT OF FACTS**

The facts are simple. The Michigan Secretary of State selected three manufacturers for counties to choose from for their voting systems. These were chosen and required to be used with a uniform configuration. There is a federal requirement that Michigan adopted that requires the machines meet or exceed the VVSG. The evidence of this is a certification provided after an accredited VSTL tests the voting system as configured against the VVSG standards. Michigan law requires additional certification and approval as permitted by federal law.

The Secretary of State has the duty to ensure compliance with federal law. There was non-compliance during the 2020 presidential election and there is about to be non-compliance in

the Michigan 2022 Midterm Election on November 8, 2022. Nevertheless, the illegal use of the machines did not stop the Governor and Michigan Board of Canvassers from certifying the Michigan election results.

**STATEMENT OF APPLICABLE LAW**

The Help America Vote Act of 2002 defines a voting system as:

> **42 USC 15481.SEC. 301. VOTING SYSTEMS STANDARDS**
> **b) VOTING SYSTEM DEFINED**.—In this section, the term ''voting system'' means—
> (1) the total combination of mechanical, electromechanical, or electronic equipment (including the software, firmware, and documentation required to program, control, and support the equipment) that is used—
>> (A) to define ballots;
>> (B) to cast and count votes;
>> (C) to report or display election results; and
>> (D) to maintain and produce any *audit trail* information; and
>
> (2) the practices and associated documentation used—
>> (A) to identify system components and versions of such components;
>> (B) to test the system during its development and maintenance;
>> (C) to maintain records of system errors and defects;
>> (D) to determine specific system changes to be made to a system after the initial qualification of the system; and
>> (E) to make available any materials to the voter (such as notices, instructions, forms, or paper ballots).

Therefore, the voting system includes a *configuration* of software and hardware which is used to not only to count votes and display results but to also "maintain and produce any *audit trail* information". Part 2 of the definition of a voting system includes the practices and documentation which are described by the plaintiff as '*certification'* and *'accreditation'*, in part. Finally, the voting system includes materials given to voters from the ballot to instructions.

The voting system has REQUIREMENTS in section 301a2 for an "audit trail" information.

> **42 USC 15481.SEC. 301**
> **a) REQUIREMENTS.—**Each voting system used in an election for Federal office shall meet the following requirements:

**(2) AUDIT CAPACITY.— (A) IN GENERAL.—**The voting system shall produce a record with an audit capacity for such system.
**(B) MANUAL AUDIT CAPACITY**.—
(i) The voting system shall produce a permanent paper record with a manual audit capacity for such system.
(ii) The voting system shall provide the voter with an opportunity to change the ballot or correct any error before the permanent paper record is produced.
(iii) The paper record produced under subparagraph (A) shall be available as an official record for any recount conducted with respect to any election in which the system is used.

The Help America Vote Act of 2002 (HAVA) then proceeds to create the US election Assistance Commission to designate this agency to create voluntary standards for the voting systems and a system of compliance by accrediting laboratories to certify that the system as configured meets the current standards—this agency was created with the obvious realization that the standards will evolve and need to be applied to a variety of configurations.. The US EAC agency is complex, and we will discuss below its role.

HAVA also provides that these are minimum requirements and permits states to enact stricter standards that are not inconsistent.

**42 USC 15484.SEC. 304**
**MINIMUM REQUIREMENTS.** The requirements established by this title are minimum requirements and nothing in this title shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this title so long as such State requirements are not inconsistent with the Federal requirements under this title or any law described in section 906.

The applicable Michigan law that describes the requirements of an electronic voting system are found at MCL 168.764a; MCL 168.795 and MCL 168.795a. These are requirements that are not inconsistent and impose additional requirements. Specifically, MCL 168.795a states:

**MCL 168.795a Electronic voting system; approval by board of state canvassers; conditions; approval of improvement or change; inapplicability of subsection (1); intent to purchase statement; instruction in operation and use; disapproval.**
Sec. 795a.

> (1) An electronic voting system **shall not be used** in an election unless it is approved by the board of state canvassers as meeting the requirements of sections 794 and 795 and instructions regarding recounts of ballots cast on that electronic voting system that have been issued by the secretary of state, unless section 797c has been complied with, and unless it meets 1 of the following conditions:
> (a) Is certified by an independent testing authority accredited by the national association of state election directors and by the board of state canvassers.
> (b) In the absence of an accredited independent testing authority, is certified by the manufacturer of the voting system as meeting or exceeding the performance and test standards referenced in subdivision (a) in a manner prescribed by the board of state canvassers.

Michigan law requires an additional series of steps. This includes approval by the board of state canvassers and one of two requirements listed in subparts (a) and (b). The national association of state election directors neither accredited an 'independent testing authority' nor established 'performance standards'. This law is therefore not complied with and its more restrictive requirements are not inconsistent with HAVA and as such are included in 42 USC 15484.SEC. 304 as requirements for the use of the voting system.

The US Election Assistance Commission has a defined process for both (a) accreditation of a Voting System Test Laboratory (VSTL) which is reduced to a written process in the manual VSTL 2.0 , and (b) standards for certification of a *configuration* of a voting system (hardware, software, audit trail, and instructions) which is reduced to writing in the Voluntary Voting System Guidelines (VVSG) of which the current version as of 2021 is version 2.0 but at the time of the 2020 election was VVSG 1.1. Michigan adopted the VVSG as a requirement at the time it accepted federal money and this is reflected in law which assigned the "duty" of compliance with the Help America Vote act to the Michigan Secretary of State in MCL 168.509n.

**168.509n Secretary of state; duties.**

> The secretary of state is responsible for the coordination of the requirements imposed under this chapter, the national voter registration act of 1993, and the help America vote act of 2002

The Federal Register with all the other states and territories published the original Michigan plan of HAVA compliance on March 24, 2004, but then Secretary of State Terri Land submitted an amended state plan dated September 27, 2005, which was published on November 9, 2005. There is no evidence that this plan has been updated subsequently on the internet or readily accessible records of the MI SOS or US EAC. On page 31 of the State Plan, the document reads:

> IV. Voting System Guidelines and Processes How the State will adopt voting system guidelines and processes, which are consistent with the requirements of section 301. -- HAVA §254(a)(4)
>
> **Michigan has adopted legislation that mandates the implementation of a statewide, uniform voting system (PA 91 of 2002)**. **The voting system selected will meet the requirements of Section 301 of the Help America Vote Act,** including all accessibility requirements.

It is important to note that Michigan adopted a *uniform* voting system which requires the county to select from 1 of 3 election systems by manufacturers: Hart-Interactive, Dominion and E S& S. The configuration is required to be uniform and to be certified by an accredited VSTL in accordance with HAVA and Michigan law.

Voting System Test Laboratory Standards or VSTL. The EAC describes VSTL Voting System Test Laboratories (VSTL) | U.S. Election Assistance Commission (eac.gov)

> Section 231(b) of the **Help America Vote Act (HAVA) of 2002** (42 U.S.C. §15371(b)) requires that the EAC provide for the accreditation and revocation of accreditation of independent, non-federal laboratories qualified to test voting systems to Federal standards. Generally, the EAC considers for accreditation those laboratories evaluated and recommend by the **National Institute of Standards and Technology** (NIST) pursuant to HAVA Section 231(b)(1).
>
> However, consistent with HAVA Section 231(b)(2)(B), the Commission may also vote to accredit laboratories outside of those recommended by NIST upon publication of an explanation of the reason for any such accreditation.
>
> In order to meet its statutory requirements under HAVA §15371(b), the EAC has developed the EAC's Voting System Test Laboratory Accreditation Program. The

> procedural requirements of the program are established in the proposed information collection, the EAC **Voting System Test Laboratory Accreditation Program Manual**. Although participation in the program is voluntary, **adherence to the program's procedural requirements is mandatory for participants**. The procedural requirements of this **Manual will supersede any** prior laboratory accreditation requirements issued by the EAC. This manual shall be read in conjunction with the EAC's **Voting System Testing and Certification Program Manual** (OMB 3265-0019).

This is about accreditation. This is the authority granted by the EAC to a laboratory to test a system and provide a certificate that the voting system meets or exceeds minimum standards. The voting systems are certified by laboratories that are accredited.

Here are the rules of the accreditation. The procedural requirements are mandatory if a laboratory voluntarily participates. The Accreditation Program Manual (APM) supersedes prior accreditation requirements. The APM must be read in conjunction with the Certification Program Manual (CPM). This seems obvious that the accreditation means that the laboratory can apply the CPM to a voting system to test it for compliance before issuing a certification.

The Motion for dismissal Plaintiff the Defendants attacked the claims that PRO V & V was not accredited as the plaintiff pled it was lapsed and defends the position on the fact that there was no "revocation" of accreditation. While there is a process for revocation which was not alleged to have occurred nor is it required when an accreditation lapses…the more relevant inquiry is what does the APM say about the DURATION of an accreditation. Is it one time and good forever until revoked as the defendants assert or imply? Is it good for a period and then it must be renewed or it expires, lapse and becomes unaccredited as the Plaintiffs claim?

In Section 1.3 of the APM 2.0 it describes the role of NIST:

> 1.3. Role of the National Institute of Standards and Technology. Section 231(b) (1) of HAVA requires that the National Institute of Standards and Technology "conduct an evaluation of independent, non-federal laboratories and shall submit to the Commission a list of those laboratories…to be accredited…." **Additionally, HAVA Section 231(c) requires NIST to monitor and review the performance of EAC accredited laboratories.** NIST has chosen its National Voluntary Laboratory Accreditation Program

> (NVLAP) to carry out these duties. NVLAP conducts a review of applicant laboratories in order to provide a measure of confidence that such laboratories are capable of performing testing of voting systems to Federal standards. **Additionally, the NVLAP program monitors laboratories by requiring regular assessments. Laboratories are reviewed one year after their initial accreditation and biennially thereafter. The EAC has made NVLAP accreditation a requirement of its Laboratory Accreditation Program.** However, a NVLAP accreditation is not an EAC accreditation. EAC is the sole Federal authority for the accreditation and revocation of accreditation of Voting System Test Laboratories (VSTL).

In the highlighted areas of emphasis above it is clear working from the bottom up that the EAC has made the NVLAP accreditation a requirement its accreditation program. This is a pre-requisite. The NVLAP prerequisite is reviewed after one year and then biannually thereafter. At t his point the contents of the review is not discussed but the presence of the review after its one year of "initial accreditation" is clear that there is a one-year grant followed by two- year durations for the period of accreditation preconditioned upon an NVLAP having a 'measure of confidence that such laboratories are capable of performing testing of voting systems to Federal standards." Again, there is a review BEFORE renewal. Is this just s rule of the EAC? Nope..it a law passed by the legislature HAVA Section 231(c) which requires NIST to 'monitor and review the performance of EAC accredited laboratories."

While the accreditation of Pro V & V is a matter the court will have to decide as to the dominion systems that were present in 48 of Michigan Counties, there is no answer to the fact that 24 counties did not have even a certificate of compliance. The ES&S systems as configured in Michigan were not certified as meeting any VVSG standard. This renders the discussion of the accreditation of Pro V & V while important not controlling on the fact the 2020 election used the voting system in 24 countries without complying with the requirements of federal or state law. The debate about the other 48 counties that used dominion and accreditation is important but there is no response to the lack of certification by the ES& S systems.

The Plaintiffs assert that the current configuration ALL of the voting systems in Michigan is (1) not uniform as required by Michigan law and clearly designed to aid the certification process (2) not certified as configured and that certification of another earlier configuration is not compliant (3) not compliant with the requirements of MCL 168.794a which requires an additional approval by the board of state canvassers of a system as meeting *performance standards* which have not been established by either the manufacturer or an accredited independent testing authority. Therefore, the Plaintiffs seek relief from future use of voting systems that violate federal and state law.

**ARGUMENT**

1. **Whether the plaintiffs have standing on any of the claims in the complaint**

The plaintiffs adopt and incorporate their response provided in the reply brief. ECF No. 15 Page ID 27-33. The standing issue has been raised to avoid addressing the merit of the claim. There is not even an attempt to claim that the ES&S systems were certified. The standing was discussed thoroughly in the Reply Brief and further repeating is not required here. It is worth noting that the Attorney General and Secretary of State have selectively asserted standing and when it suits their political interests such as during the recent appeals from the Board of State Canvassers to the Michigan Supreme Court as well as in other cases where there is a suit friendly to the political position of the Michigan Secretary of State that the standing claims are not asserted.

2. **Whether the plaintiffs are barred by latches.**

The doctrine of latches is an equitable doctrine is a legal defense which asserts that there has been an unreasonable delay in pursuing the claim which has prejudiced the defendant to the point it prevents them from defending the action.

There was no unreasonable delay. The time period which has passed is not significant even to the 2020 remedy the defendant requests as the office term is still ongoing. As to the future elections, the matter is very timely filed. A common law *quo warranto* action brought by a candidate who claims that an election irregularity deprived them of office can timely bring a claim anytime during the office term There is no reason why when another person seeks to redress an election remedy that there is some magical timeline that would be shorter. As this is an equitable principle there is no precedents to point to as to the timeliness of this novel claim.

There is no evidence of prejudice in the present case. The records related to certification and accreditation (or lack thereof) as to 2020 still exist. The 2022 Midterm election is about to occur and there will be future elections. The determination if the Governor and Board of Canvassers may certify an election with an illegal voting system is very much able to be addressed without prejudice to the defense.

The Plaintiff incorporates his arguments from the reply brief in response herein. ECF 15 Pages 33-36.

**3. Whether the plaintiffs statutory and constitutional claims are without merit**

**a. Equal Protection**

The defendant reasserts the argument in the reply brief ECF No 15 Pages 36-38.

Further, the Plaintiff asserted on behalf of the voters Jason Ickes, Donna Brandenburg and Ken Beyer a violation of equal protection. In addition, candidate Donna Brandenburg sought prospective relief for the 2022 election with standing as a candidate. The equal protection claim is based squarely on <u>*Bush v Gore*</u>, *531 US 98 (2000)* in which the Supreme Court held that a disparate vote counting procedure in different counties that tried to discern *"voter's intent"* was a violation of the Equal Protection Clause of the 14th Amendment. This triggered a requirement that each state legislatively define what a valid mark on a ballot was so that the process would

not be arbitrary and capricious. This was included in HAVA with the requirement that each state have uniform requirements for what constitutes a vote.

**42 USC 15481.SEC. 301. VOTING SYSTEMS STANDARDS.**

**(a) REQUIREMENTS**.—Each voting system used in an election for Federal office shall meet the following requirements

**(6) UNIFORM DEFINITION OF WHAT CONSTITUTES A VOTE**.— Each State shall adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State.

Michigan complied with a standard definition of what constitutes a mark as defined in detail in MCL 168.803

> **168.803 Counting and recounting of votes; intent of voter; stray marks; instructions issued by secretary of state.**
>
> **(1) Except as otherwise provided in this act, the following rules govern the counting and recounting of votes:**
>
> **(a) If it is clearly evident from an examination of a ballot that the ballot has been mutilated for the purpose of distinguishing it or that there has been placed on the ballot some mark, printing, or writing for the purpose of distinguishing it, then that ballot is void and shall not be counted.**
>
> **(b) A cross, the intersection of which is within or on the line of the proper circle or square, or a check mark, the angle of which is within a circle or square, is valid. Crosses or check marks otherwise located on the ballot are void.**
>
> **(c) Marks other than crosses or check marks used to designate the intention of the voter shall not be counted.**
>
> **(d) A cross is valid even though 1 or both lines of the cross are duplicated, if the lines intersect within or on the line of the square or circle.**
>
> **(e) Two lines meeting within or on the line of the square or circle, although not crossing each other, are valid if it is apparent that the voter intended to make a cross.**
>
> **(f) A failure to properly mark a ballot as to 1 or more candidates does not alone invalidate the entire ballot if the ballot has been properly marked as to other candidates, unless the improper marking is determined to be a distinguishing mark as described in this subsection.**
>
> **(g) Erasures and corrections on a ballot made by the elector in a manner frequently used for this purpose shall not be considered distinguishing marks or mutilations.**
>
> **(h) A ballot or part of a ballot from which it is impossible to determine the elector's choice of candidate is void as to the candidate or candidates affected by that determination.**

**(i) A vote cast for a deceased candidate is void and shall not be counted, except that a vote cast for a candidate for governor who has died, and for whom a replacement has not been made, shall be counted for the candidate for lieutenant governor of that party.**
**(j) A ballot cast that is not counted shall be marked by the inspector "not counted", kept separate from the others by being tied or held in 1 package, and placed in the ballot box with the counted ballots.**
**(k) A vote shall not be counted for a candidate unless a cross or a check mark has been placed by the voter in the square before the space in which the name of the candidate has been printed, written, or placed.**
**(2) If an electronic voting system requires that the elector place a mark in a predefined area on the ballot in order to cast a vote, the vote shall not be considered valid unless there is a mark within the predefined area. A stray mark made within a predefined area is not a valid vote. In determining whether a mark within a predefined area is a stray mark, the board of canvassers or election official shall compare the mark with other marks appearing on the ballot. The secretary of state shall issue instructions, subject to the approval of the board of state canvassers, relevant to stray marks to ensure the fairness and uniformity of determinations made under this subsection. A secretary of state's instruction relevant to stray marks shall not be applied to a ballot unless the secretary of state issued the instruction not less than 63 days before the date of the election.**

There are clear instructions to the voter on how to mark the ballot. A voter which chooses to vote in person has the option of watching to ensure the ballot is accepted by the tabulator. Voting by absentee does not provide the voter the opportunity to correct an improperly marked ballot. There is no lawful means to alter the mark in adjudication to carry out the voter's intent and any effort to do so would be a violation of law. Alteration of the image or even duplication to remove stray marks is not permitted. A hand count of the ballot with a stray mark is permitted by MCL 168.798c

On information and belief, the software on the electronic voting system software allows the clerk to choose the standard for a "mark" by setting the pixel count range including a minimum number of pixels within the area to be marked during voting.

> As the legislature has not set a uniform standard for the adjudication to determine *voter's intent* or a standard for a pixel count that is uniform across Michigan this is an arbitrary and capricious process that violates equal protection.

However, the Dominion systems allow for adjudication…a process not authorized by law in Michigan which allows the arbitrary and capricious process of allowing election inspectors decide the voters intent. This illegal adjudication process is for sure happening in Detroit at the AVCB. Here is a video from 2017 of the Dominion CEO Eric Coomer explaining what the adjudication capability of Dominion. https://rumble.com/embed/v8upcz/

While the Defendants assert there is no violation of equal protection, there is whenever there is a denial of access to the ballot box, whenever the ballots are not counted as cast or when there is dilution of the vote. The amended complaint clearly establishes that there were both problems with counting votes as cast in Antrim County (discovered by hand recount) and Detroit (adjudication) as well as problems with ballot dilution based on the evidence presented in the film *2000 Mules.* However, the exact issue of using "voter intent" condemned in *Bush v Gore*, supra, is used in adjudication and the voting system's interpretation of a valid mark by pixel count is a setting in the control of a clerk.

**b. 50 USC 20701**

50 USC 70201 provides that the attorney general can bring federal criminal charges. This argument is without merit because the reference to the requirement for records retention was merely to inform the court of an already existing duty for record preservation that had both (1) been violated and (2) was about to lapse any further protections. No claim was made to enforce this rule as a criminal or civil matter. Instead, the request for relief as to record preservation was

because the issue of fact as to compliance may come up as to whether Michigan complied with the federal statutory requirements of the audit trail in the 2020 election.

**Whether it is relevant who retains the records under Michigan law when the records necessary to demonstrate an audit trail for this lawsuit is relevant-especially when the Secretary of State has under threat of prosecution ordered the destruction of the digital audit logs from the tabulators.**

The Secretary of State has ordered that the security, access and/or audit logs and possibly ballot images that are on the removable thumb drives be erased seven (7) days after the election. This violates Principle 15 of VVSG 2.0, the federal records retention laws 50 USC 20701, and is a felony under MCL 168.932c. This argument is not premised on the Plaintiffs'ability to enforce these criminal violations but rather offered to show that the this is willful misconduct that will remove the trial courts ability to review the audic capacity and audit trail to understand both the accuracy of the election and compliance with the federal VVSG standards. Why delete this information? What is being hidden?

**MCL 168.932 Prohibited conduct; violation as felony.**

**A person who violates 1 or more of the following subdivisions is guilty of a felony:**

**(c) An inspector of election, clerk, or other officer or person having custody of any record, election list of voters, affidavit, return, statement of votes, certificates, poll book, or of any paper, document, or vote of any description, which pursuant to this act is directed to be made, filed, or preserved, shall not willfully destroy, mutilate, deface, falsify, or fraudulently remove or secrete any or all of those items, in whole or in part, or fraudulently make any entry, erasure, or alteration on any or all of those items, or permit any other person to do so.**

While it is true that the responsibility is on the clerks, the Secretary of State used their authority under MCL 168.22 to order the destruction of the August 2, 2022, Primary Data on the removable disc drives.

**168.21 Secretary of state; chief election officer, powers and duties.**
**The secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act.**

The plaintiffs seek the protection of the election data that would provide an audit trail as this information may be required to adjudicate the present lawsuit. The defendant incorporates the discussion from the Reply brief here.

**c. Whether any claims of the plaintiff are barred by the 11th Amendment**

The 11th Amendment is only a bar to a claim for money damages which was not sought except as to the violations of the civil rights under 1983. The 11th Amendment does not preclude declaratory relief, injunctive relief, or mandamus relief. The Defendants fail to itemize which claims are barred by the 11th Amendment and will not result in dismissal of the complaint. The Plaintiff realleges all arguments made in the reply brief here. ECF No 15 Page 38.

**IV. Whether the plaintiffs are entitled to declaratory relief**

This claims that there is no case or controversy and that the matters are not ripe. The case or controversy is most apparent with the clerk Sharon Olson who seeks guidance on the use of the machine which appears to be illegal in the conduct of her election. The guidance of the federal court related to the effect of non-compliance with the federal statute by the Michigan Secretary of State is critical. There is a case or controversy. Again, the ripeness argument seems absurd in that the Election for November 8, 2022 is days away at the writing of this brief and yet another election will occur with some counties in Michigan using voting systems in violation of federal and state law.

Conclusion

Defendant's motion to dismiss should be denied for the reasons stated herein.

Dated: 10/26/2022

/S/ Daniel J. Hartman
Daniel J. Hartman (P52632)

**Certificate of Compliance with Type-Volume Limit and Typeface Requirements**

1. This brief complies with the type-volume limitation of Local Rule 7.2(b)(ii) because, excluding the part of the document exempted by this rule, this brief contains less than 10,800 words. This document contains 4879 words.

2. This document complies with the typeface requirements of Local Rule 7.2(b)(ii) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 12-point Times New Roman.

DATED: 10/26/2022

/S/ Daniel J Hartman
Daniel J Hartman (P52632)