UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON ICKES, *et al.*,                          )
                              Plaintiffs,        )
                                                 )        No. 1:22-cv-817
-v-                                              )
                                                 )        Honorable Paul L. Maloney
GRETCHEN WHITMER, *et al.*,                      )
                              Defendants.         )
_____)

## OPINION AND ORDER GRANTING MOTION TO DISMISS

Plaintiffs believe that the 2020 election in Michigan counted illegal votes and failed to count legal votes.  Approximately two years after that election, Plaintiffs filed this lawsuit. Among other things, Plaintiffs seek to preserve records from the 2020 election and request a court-ordered "do-over" for the 2020 presidential election.[1]  Defendants filed a motion to dismiss (ECF No. 17).  Most of the Plaintiffs allege only a generalized grievance and, therefore, lack standing.  The remaining Plaintiffs have failed to state a claim upon which this Court might grant relief.  The Court will grant the motion to dismiss.

I.

Defendants have raised a challenge to the lawsuit at the pleading stage.[2]  A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to

_____

[1]     Curiously, the first eight words in Plaintiffs' response brief are "This case is not about the 2020 election" (ECF No. 22 PageID.1599).

[2]     The parties previously briefed a motion for a preliminary injunction in which they discussed many of the issues raised in this motion.  Defendants incorporate by reference the discussions in their response to the motion for a preliminary injunction (ECF No. 11).  Plaintiffs also incorporate by reference the discussions in their reply brief for the motion for a preliminary injunction (ECF No. 15).

relief.  Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of America, N.A.*, 773 F.3d 741, 750 (6th Cir. 2014).  The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 768 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## A.

The plaintiff bears the burden of establishing subject matter jurisdiction, *EEOC v. Hosanna-Tabor Evangelical Lutheran Church and Sch.*, 597 F.3d 769, 776 (6th Cir. 2010) (citing *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007)), which includes the burden of establishing standing, *Schickel v. Dilger*, 925 F.3d 858, 866 (6th Cir. 2019) .  A challenge to subject-matter jurisdiction brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion.  *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.  In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists.  *Id.*

## B.

A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a plaintiff pleads a cognizable claim. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). A plaintiff's factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (italics in original). To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level." *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'" *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted).

## II.

On September 2, 2022, Plaintiffs filed a complaint and a request for a temporary restraining order. Plaintiffs pleaded that their votes in the Michigan 2020 presidential election had been diluted. In the motion for a temporary restraining order, Plaintiffs sought a court order that would prevent the destruction of records, documents and other evidence relating to Michigan's 2020 presidential election. The Court denied that request (ECF No. 7). The Court concluded that Plaintiffs had not established irreparable harm (the imminent

destruction of election records).  The Court concluded Plaintiffs likely did not have standing (generalized injury common to all voters).  The Court concluded that Plaintiffs had not established a likelihood of success on the merits (all ballots cast were treated in the same manner).  Finally, the Court concluded that Plaintiffs might not have sued the proper party for the emergency relief sought.  In the original complaint, Plaintiff sued Governor Whitmer and Secretary of State Benson only, neither of whom had responsibility for retaining election records.  The Court indicated that it would consider the motion as one for a preliminary injunction and, after receiving and reviewing briefs from Defendants, would determine if any hearing would be held before resolving the motion (*id.*).

Plaintiffs then filed a First Amended Complaint which now serves as the governing pleading (ECF No. 8 Compl.).[3]  Beginning with the parties, the complaint identifies six plaintiffs and three defendants.  Plaintiffs Jason Ickes and Ken Beyer are citizens of Michigan and both voted in the 2020 presidential election in Michigan.  Plaintiff Donna Brandenberg voted in the 2020 election and is running for Michigan Governor as a candidate for the US Taxpayers Party.  Plaintiff Sharon Olson is the elected Clerk for Irving Township in Barry County.  She was responsible for conducting the 2020 election and will be responsible for conducting the 2022 election.  The complaint identifies two organizational plaintiffs.  The Macomb County Republican Party is a county-based organization that promotes the election of Republican candidates to represent the people of Macomb County, Michigan.  Finally,

---

[3]    Plaintiffs filed the amended complaint before the 2022 election.  This Opinion issues after the 2022 election.  Because the appropriate focus for this motion is the allegations in the complaint, the Court has endeavored to describe the allegations in the pleading about the 2022 election using the present or future tense rather than past tense.

Plaintiffs describe the Election Integrity Fund and Force as a Michigan-based non-profit organization that promotes fair, accurate and honest elections.  In the new complaint, Plaintiffs sued Governor Whitmer, Secretary Benson, and the Michigan Board of State Canvassers, all in their official capacities.

Plaintiffs set forth their cause (or causes) of action beginning on page 30 of the complaint (PageID.117).  Plaintiffs plead a violation of their right to vote.  Plaintiffs assert that the First, Ninth and Fourteenth Amendments protect their

> constitutional right to vote for the candidate of their choice, but also the constitutional right not to have [their] vote[s] diluted, canceled out, and/or nullified by the counting of illegal or false or fraudulent votes and/or by the failure to count legal votes, and or by the certification of fraudulent and/or unverifiable votes.

(Compl. ¶ 124 PageID.117).  Plaintiffs make the same assertion for the Equal Protection Clause (*id.* ¶ 125 PageID.118).

Plaintiffs then explain how Defendants' actions impaired their right.   First, Defendants allowed uncertified voting machines to be used in Michigan (failed to have certified machines used) and caused Plaintiffs' ballots to be "diluted, canceled out, and/or nullified." (Compl. ¶ 126 PageID.118).  Plaintiffs plead that the dilution occurred because unauthorized ballots were cast during the election (*id.* ¶ 127 PageID.118).  Plaintiffs next allege that evidence exists to show voting irregularities, including: (1) votes cast but not recorded or not recorded accurately, (2) qualified voter histories (QVF) show alterations of records, (3) votes cast by individuals who do not live in the district where the vote is recorded, (4) QVF showing absentee or mail-in ballots cast by individuals who voted in person, and (5) Dominion Electronic Voting Systems "flipped" votes (*id.* ¶ 131 PageID.119-20).

In addition to vote dilution, Plaintiffs allege other ways their Equal Protection right has been violated. The "failure to provide a public audit trail" violates the right (Compl. ¶ 134(b) PageID.121). Plaintiffs also complain about various failures to adhere to objective standards and certifications concerning voting machines: (1) the failure to have vote counts certified to the objective current standard required by law (*id.* ¶ 134(c) PageID.121) and (2) the failure to have all Voting Systems Test Laboratories be validly accredited before issuing a certification of compliance (*id.* ¶ 134(d) PageID.121-22).

Plaintiffs identify the relief sought in paragraphs 136 and 137.

136. The lawsuit has advanced two legal causes of action 1) for declaratory relief and 2) damages for violation of equal protection rights.

137. The lawsuit seeks additional equitable remedies 1) mandamus asking for the redo of the presidential election, 2) injunctive relief for the preservation of election generated data from 2020; and 3) injunctive relief from non-compliance with HAVA [Help America Vote Act] as required by Michigan Law.

(*Id.* PageID.122). The complaint includes a request a for a preliminary injunction ordering the removal of all non-certified election equipment before the 2022 election and also for an order requiring Defendants to preserve all 2020 presidential election records indefinitely (*id.* PageID.123).[4] Plaintiffs seek a permanent injunction against the future use of uncertified electronic voting systems (*id.*) Finally, Plaintiffs seek a writ of mandamus compelling Defendants to decertify the 2020 presidential election, to recall the presidential electors, and to order Defendant to rerun the election using "paper ballots only, on a single election **day**,

---

[4] In their motion for a temporary restraining order, Plaintiffs sought only the preservation of records. Prior to the 2022 election, Plaintiffs did not file any motion asking the Court for an order preventing the use of uncertified election equipment.

with the votes being counted by hand, with members of all political parties present to observe, with a public livestream of all vote counting" (*id.* PageID.124).

    With these allegations in mind, the Court considers whether Plaintiffs have standing to pursue the claims in the complaint.

III.

    Article III, Section 2 of our Constitution provides that judicial power extends only to cases and controversies.  U.S. Const. Art. III § 2; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  Because of this constitutional restriction, our Supreme Court describes federal courts as "courts of limited jurisdiction."  *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).  Standing is a "core component ... an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see Spokeo*, 578 U.S. at 338 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.").  The case-or-controversy requirement, and specifically the issue of standing, constitutes a "threshold question in every federal case" and implicates subject-matter jurisdiction.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020) ("The doctrine of standing arises from Article III of the Constitution, which gives federal courts jurisdiction over cases and controversies").  When no plaintiff has standing, the court lacks subject-matter jurisdiction and must dismiss the lawsuit.  *See Tennessee v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019).

    "Standing is not dispensed in gross."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up; quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)); *see Town of*

*Chester, New York v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).  Courts consider standing on a plaintiff-by-plaintiff basis and a claim-by-claim basis.  *Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017) ("... for each claim, each plaintiff must allege" facts necessary to show standing); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("... our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."); *Laroe Estates*, 581 U.S. at 439 ("The same principle applies when there are multiple plaintiffs.").  Courts must also consider "standing separately for each form of relief sought."  *DaimlerChrysler*, 547 U.S. at 352 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)); *see Laroe Estates*, 581 U.S. at 439 ("At least one plaintiff must have standing to seek each form of relief requested in the complaint); *see, e.g., City of Los Angeles v. Lyons* , 461 U.S. 95, 109 (1983) (finding that the plaintiff had standing to pursue damages but did not have standing to pursue injunctive relief).  So long as one plaintiff has standing to litigate a claim and standing to seek particular relief, a court may exercise jurisdiction over that claim and the action may proceed.  *See Parsons v. United States Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015).  However, parties without standing for any claim may not participate in the lawsuit.  *Valley Forge Christian Coll. v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982) ("Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States.").

Our Supreme Court describes the "'irreducible constitutional minimum' of standing" as comprising three elements.  *Spokeo*, 578 U.S. at 338.  "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and

(3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560-61).  For the injury-in-fact element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560).  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).  When a court considers standing "at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518).

A plaintiff cannot establish standing based on the desire that the government follow the law because that claim would not be personal and particularized.  Generalized grievances rely on "plainly undifferentiated" injuries that are "common to all members of the public." *United States v. Richardson*, 418 U.S. 166, 177 (1974).  A plaintiff's generalized grievance about government "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly or tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74; *see United States v. Hays*, 515 U.S. 737, 743 (1995) ("... we have repeatedly refused to recognize a generalize grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power."); *Valley Forge*, 454 U.S. at 482-83 ("This Court repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law...") (cleaned up; citation omitted).

### A. Plaintiff Ickes and Beyer

Plaintiffs Ickes and Beyer advance several theories for standing. Both submitted Freedom of Information Act (FOIA) requests for information "that has not been provided and had been reported as not being preserved" (Compl. ¶ 1.a. PageID.89 and ¶ 2.a. PageID.90). Both believe that evidence exists that would show that their votes were diluted and that the 2020 election did not accurately determine the winter (*id.* ¶ 1.d PageID.90 and ¶ 2.d PageID.91).

Neither Ickes nor Beyer have pled facts sufficient to establish standing. Plaintiff have not demonstrated standing based on their inability to obtain voter information about the 2020 election. Plaintiffs do not identify the nature of the FOIA requests or to whom they made the requests. Plaintiffs allege no facts to support the conclusion that Ickes' and Beyer's FOIA-related injury can be fairly traceable to an act or omission by any named Defendant. And, Plaintiffs do not ask seek any relief from this Court for this alleged injury.

Their voter dilution claim fares no better. Our Supreme Court has held that the "the right to vote is 'individual and personal in nature.'" *Gill v. Whitword*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). "Thus, 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 206 (1962)). The Sixth Circuit has "at least implicitly recognized dilution of voting as an injury sufficient to confer standing." *Kardules v. City of Columbus*, 95 F.3d 1335, 1348 (6th Cir. 1996). Typically, a successful voter dilution claim "requires a point of comparison." *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020). For example, in racial gerrymandering cases, the alleged injury

is "district specific" and a voter asserting racial gerrymandering "has standing only to assert that his own district has been gerrymandered." *Gill*, 138 S. Ct. at 1930; *see Wood*, 981 F.3d at 1314 (explaining that in "racial gerrymandering and malapportionment contexts, voter dilution occurs when voters are harmed compared to 'irrationally favored' voters from other districts"). Plaintiffs offer no point of comparison.

A plaintiff's allegation that votes have been improperly counted does not establish that his or her vote has been specifically disadvantaged. *Wood*, 981 F.3d at 1314. Voter dilution claims under the Equal Protection Clause rest on the idea that each vote must carry equal weight. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019) ("... 'voter dilution 'in the one-person, one-vote cases refers to the idea that each vote must carry equal weight"). "Vote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing.'" *Wood*, 981 F.3d at 1315 (citation omitted). Indeed, [d]isrict courts across the country have consistently dismissed complaints premised on the theory of unconstitutional vote dilution in the aftermath of the 2020 election" when the plaintiff's claim "applies equally to very other ... voter." *Soudelier v. Dept. of State Louisiana*, No. No. 22-2436, 2022 WL 17283008, at *3 (E.D. La. Nov. 29, 2022) (collecting cases); *see, e.g., Washington Election Integrity Coal. United v. Bradrick*, No. 2:21cv1386, 2022 WL 4598504, at *4 (W.D. Wa. Sept. 30, 2022) (finding no standing for a vote dilution lawsuit based "based on general allegations of election irregularities that affected the votes of all 'qualified electors' in the County" and collecting cases reaching the same conclusion); *Grey v. Jacobson*, No. 22-82, 2022 WL 9991658, at *4 (D. Mont. Oct. 17, 2022) (finding no standing based on allegations about problems with election system software because the allegation was a "generalized

grievance" and collecting cases).  Notably, Plaintiffs have not provided the Court with a single citation where, leading up to or following the 2020 election, a court found Article III standing for a voter who alleged voter dilution on any theory similar to the ones advanced by Plaintiffs in this lawsuit.  Other courts have noted the one-sided balance of authority.  *See O'Rourke v. Dominion Voting Sys. Inc.*, No. 20cv3747, 2021 WL 1662742 at \*9 (D. Col. Apr. 28, 2021) ("In sum, federal courts addressing these issues, whether in the 2020 or other elections, are nearly uniform in finding these types of election-related harms of which the Plaintiffs complain insufficient to confer standing. ... In contrast to the veritable tsunami of decisions finding no Article III standing in near identical cases to the instant suit, Plaintiffs' arguments in opposition to Defendants' Motion to dismiss are cursory and neither cite nor distinguish any of the cases that have found a lack of standing among voter plaintiffs making challenges to the 2020 election.").

### B.  Plaintiff Donna Brandenberg

Plaintiffs plead that Brandenberg is a voter whose vote was diluted in 2020 (Compl. ¶ 4.d PageID.93).  As a voter in the 2020 election, Brandenberg's standing suffers the same infirmities as Plaintiffs Ickes and Beyer.

Plaintiffs also plead that Brandenberg is a candidate in the 2022 election (*id.*)  As a candidate for a state-wide office in the 2022 election, Brandenberg's interest in the upcoming election differs from members of the general public who voted in the 2020 election and those individuals who might vote in the 2022 election.  Plaintiffs contend that Michigan will use uncertified voting systems in the 2022 election.  The voting machine will not have the latest software with the most recent security features.  Plaintiffs request prospective relief

concerning the use of uncertified voting machines in the 2022 election.  Plaintiffs have pled sufficient facts to establish standing for Plaintiff Brandenberg.[5]

### C.  Plaintiff Macomb County Republican Party

Plaintiffs contend that the Macomb County Republican Party (MCRP), through its executive committee, has standing. "An association has standing to sue on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181; *see Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 441 (6th Cir. 2020).

First, Plaintiffs plead that the executive committee officers "have provided substantial money, time, and effort to support a candidate for President that was determined to have lost the 2020 election."  (Compl. ¶ 3.a PageID.91).  Individual voters do not have a legal interest in the outcome of any particular election and, therefore, individual voters cannot establish standing simply because their preferred candidate loses.  *See Raines v. Byrd*, 521 U.S. 811, 824 (1997); *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1246 (11th Cir. 2020) ("A candidate's electoral loss does not, by itself, injure those who voted for the candidate.  Voters have no judicially enforceable interest in the *outcome* of an election.").

---

[5]      Defendants have not argued, and this Court has not considered, whether Brandenberg's injuries-in-fact concerning the 2022 election are speculative.  Should any claim survive Defendants' motion, the question of standing relevant to the 2022 election can be revisited as subject matter jurisdiction, and standing, can be challenged at any time.  *See in re Schubert*, Nos. 21-3969 and 3982, 2023 WL 2663257, at *2 (6th Cir. Mar. 28, 2023).

Because MCRP's members lack a legal interest in the outcome of the election, so too MCRP lacks a legal interest and therefore lacks standing.

Second, Plaintiff plead that the leaders of MCRP have "reviewed the Edison election data results from the 2020 election that show significant problems in the precincts from Macomb County as they reported data in a cumulative process had the data show significant abnormalities" (Compl. ¶ 3.b. PageID.91).   Plaintiffs' allegation here lacks sufficient information and detail to establish standing.   Plaintiffs do not plead that the abnormalities are fairly traceable to the actions or inaction of any defendant.   Nor do Plaintiffs explain how the Court could redress the abnormalities.   Even assuming that MCRP could establish the first two prongs for standing, the proper remedy would not be an entirely new state-wide election.[6]

Third, MCPR believes that "the election results reporting shows manipulation of the voting in real-time at speed that it must be generated by the" electronic voting systems (Compl. ¶ 3.c PageID.92).   MCPR also state that "the precincts as they report their tabulated totals should not have amendments that delete or remove the vote totals or the total by whether a vote was cast in person or absentee" (*id.* ¶ 3.d PageID.92).   Again, Plaintiffs' allegations here lack sufficient information and detail to establish standing.   Whatever injury these allegations purport to support, the injury would be common to all voters and not personal to MCPR or its members.   Plaintiffs have not pled facts to suggest that this injury is somehow connected to the lack of certification.   Plaintiffs have not pled facts to show how

---

[6]     Even if MCPR could establish all three standing elements, as explained below, this Court cannot grant relief in this lawsuit for injuries arising from the 2020 election.

these alleged injuries are fairly traceable to any Defendant.  Nor have Plaintiffs explained how the Court might redress these injuries.

Finally, MCPR pleads that its officers were voters in the 2020 election and that they "have concerns about machine 'flipping' votes in Antrim County" (Compl. ¶ 3.e PageID.92). MCPR officers are also aware of "affidavits from around the state that show that voters report no record of their vote, an improper record as absentee when voting in person or that persons voted from their property without being residence" (*id.*)  Having "concerns" is not an injury-in-fact.  Because MCPR represents the interests of individuals in Macomb County, neither MCPR nor its officers can allege establish an injury based on vote flipping in a different county.  Plaintiffs do not plead that any officer of MCPR suffered an injury in the manner allegedly described in the affidavits of other unknown and unnamed individuals. Therefore, whatever injury might be alleged in the affidavits is not personal to any plaintiff in this lawsuit.

### D.  Plaintiff Election Integrity Fund and Force (EIF)

Plaintiffs plead that EIF has "spent a significant amount of time and money to understand whether the 2020 Presidential Election Results accurately reported what occurred in the election (Compl. ¶ 5.a PageID.94).  Plaintiffs then describe how and what EIF has done to compile information about the election.  Plaintiffs plead that "[a]s a public interest group devoted to understanding and compiling information from a non-partisan perspective, EIF claims standing in that they have been uniquely effected [sic] in that they have had to divert enormous and energy to investigate fairly what occurred in the 2020 election" (*id.* ¶ 5.c.vii PageID.95).

Plaintiffs have not pled sufficient facts to establish standing for EIF in this lawsuit. Organizations can establish standing under a diversion-of-resources theory when a defendant's acts impair the organization's mission by causing the organization to divert resources in response.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also Common Cause Indiana v. Lawson*, 937 F.3d 944, 952-53 (7th Cir. 2019) ("Our sister circuits have upheld that standing of voter-advocacy organizations that challenged election laws based on similar drains on their resources" and collecting cases).  Plaintiffs cannot establish an injury by performing and accomplishing the very purpose or the organization, which Plaintiffs describe as understanding and compiling information about the election.  *See Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 982 (6th Cir. 2020 ("The alleged diversionary actions—spending money to 'bring, fund, and participate in this litigation,' and spending its resources to 'address the voting inequities and irregularities' throughout the country—do not divert resources from its mission.  That is the mission.") (citations to the record omitted).  Plaintiffs' allegations here merely mechanistically repeat the words used to describe a diversion-of-resources theory for standing.  Plaintiffs have not identified any particular program or goal from which resources were diverted in response to an act of one of the Defendants.  *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 460-61 (6th Cir. 2014).

### E.  Plaintiff Sharon Olson

Olson appears in this lawsuit in her official capacity.[7]  Plaintiffs plead that Olson is a local election law clerk who "does not have a stake in the outcome of the 2020 or future elections but has a legal obligation to make sure that she conducts the best and fairest election possible under the law" (Compl. ¶ 6.b PageID.96).  Plaintiffs plead that Olson must use the Electronic Voting System "or she faces the threat of removal (probably unconstitutional threat) or being charged with a misdemeanor for failure to comply with an instruction" (*id.* ¶ 6.c PageID.96).  Plaintiffs plead that using an uncertified or not properly certified voting machine is "repugnant" to Olson (*id.* ¶ 6.d PageID.96).

Plaintiffs have likely pled sufficient facts for Olson to have standing.  Plaintiffs have not established that Olson faces an imminent threat of removal or prosecution.  *See Glenn v. Holder*, 690 F.3d 417, 424 (6th Cir. 2012) ("Conspicuously absent from Plaintiffs' allegations is any express (or even implied) threat of official enforcement of the Hate Crimes Act against Plaintiffs or any other religious leaders for the type of conduct they seek to practice: there is nothing that *objectively* supports a 'credible threat of prosecution.'").  But, as the local clerk responsible for the election, her desire to conduct the election with certified

---

[7]        In their reply brief, Defendants argue that Olson has not been authorized to sue in her official capacity.  On October 18, 2022, about one month after Defendants filed their motion to dismiss, the Township Board for Irving Township in Barry County, Michigan adopted Resolution No. 2022-13 (ECF No. 23-2 pageID.1623).  The resolution sought to clarify the Township's position concerning this lawsuit.  The resolution states that for Olson to proceed in her official capacity, she would need Board approval.  The resolution also states that the Township Board did not authorize the lawsuit nor did it retain counsel for the purpose of representing the Township in this lawsuit.  The Court cannot consider this argument.  Defendants present it for the first time in the reply brief and Plaintiffs have not been afforded any opportunity to respond.  And, Defendants rely on a document outside of the pleadings.  For a Rule 12(b)(6) motion, the Court cannot consider the document.

machines (or without using uncertified machines), likely states a concrete injury-in-fact.[8]  *See*
*Lujan*, 504 U.S. at 562-63 ("... the desire to use or observe an animal species, even for purely
esthetic purposes, is undeniably a cognizable interest for the purpose of standing.").  Based
on the allegations in the complaint, Olson cannot accomplish her desire because of
Defendant Benson's actions.

## F.  Remedies

The Court considers whether Brandenberg and Olson have standing to pursue the
various remedies sought in the complaint.   *See DaimlerChrysler*, 547 U.S. at 352.
Brandenberg and Olson have standing based on the allegations in the complaint about the
use of uncertified voting machines in the 2022 election.  Neither Brandenberg nor Olson
have standing to seek any remedy related to the 2020 election.  Brandenberg and Olson
cannot seek damages or any equitable relief based on what occurred during the 2020
election.  They lack standing to seek declarations about the 2020 election.  They also lack
standing to seek a do-over for the 2020 election.

## IV.

Because the Court has found that two plaintiffs, Brandenberg and Olson, have
standing to assert claims arising in the 2022 election, the Court will consider the other issues
raised in Defendants' motion.

---

[8]      Again, Defendants have not argued, and this Court has not considered, whether this injury
is speculative.

Defendants ask the Court to dismiss the complaint on basis of laches.[9]  Rule 8(c)(1) of the Federal Rules of Civil Procedure identifies laches as an affirmative defense that a party may raise in a responsive pleading.  Ordinarily, parties cannot prevail on a Rule 12(b)(6) motion raising an affirmative defense.  For Rule 12(b)(6), a court considers only the pleading and assumes the allegations in the pleading to be true.  *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).  Plaintiffs are not required to plead facts to avoid affirmative defenses.  *See Jones v. Bock*, 549 U.S. 199, 212 (2007).  However, a court may consider and resolve a motion to dismiss raising an affirmative defense when the allegations in the complaint establish the elements of the affirmative defense.  *See Marsh v. Genentech, Inc.*, 693 F.3d 546, 554-55 (6th Cir. 2012); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009).

By raising laches, the moving party argues that the opposing party failed to timely protect his or her rights.  *See Chiro v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007).  "In cases where suit has been brought after some lapse of time, the question is whether it would be equitable, because of the delay, to enforce the claim."  *Czaplicki v. The Heogh Silvercloud*, 351 U.S. 525, 533 (1956).  The party asserting laches bears the burden of proving a lack of diligence by the party against whom laches is asserted and prejudice to the party asserting laches.  *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 854 (6th

---

[9]    The word "laches" has roots in both French and English, and in both languages the word referred to slackness, laxness or remissness.  As a legal doctrine, laches evolved in courts of equity. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 (2014).  Plaintiffs consistently use the word "latches" which refers to device used for catching and restraining, most typically for a door or window.  (ECF No. 15 PageID.247-250; ECF No. 22 PageID.1606).  Latches does not have any particular legal meaning.

Cir. 2023).  "In this circuit, we recognize a strong presumption against asserting a laches defense to shorten a statute of limitations." *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1054 (6th Cir. 2015) (citations omitted).

At this point in the litigation, the Court declines to find that laches bars the injunctive relief Brandenberg and Olson seek concerning the 2022 election.  For Defendants' motion, the Court considers only the allegations in the complaint.  While delay might be assumed based on the date of the 2020 election and the date of the filing of the complaint, Plaintiffs plead no facts from which the Court might infer a lack of diligence for the prospective relief.  And, the factual allegations in the complaint do not allow the Court to make any inferences or assumptions about prejudice to Defendants.  A plaintiff does not need to plead facts to avoid an affirmative defense; a defendant must prove the elements of the defense.

## V.

Next, the Court considers the merits of the causes of action brought in the complaint. Defendants seek dismissal of the Equal Protection claim, any claim under 52 U.S.C. § 20701, all claims for damages, and the requests for declarations.  The Court evaluates the claims in light of the earlier conclusion that only Brandenberg and Olson have standing to bring a claim and the conclusion that their claims must arise from the 2022 election.

### A.  Equal Protection

In the context of voting rights, the Equal Protection Clause in the Fourteenth Amendment requires that "all who participate in the election are to have an equal vote— whatever their race, whatever their sex, whatever their occupation, whatever their income ...." *Reynolds v. Sims*, 377 U.S. 533, 557-58 (1964) (quoting *Gray v. Sanders*, 372 U.S. 368, 379

(1963)).  "The right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (collecting cases).  "Equal protection of the laws means that having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *George v. Hargett*, 879 F.3d 711, 728 (6th Cir. 2018) (cleaned up; quoting *Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (per curiam)).  In *Bush v. Gore*, the Supreme Court found that the lack of uniform rules to determine voter intent as part of a recount resulted in a violation of the Equal Protection Clause because "the standard for accepting or rejecting contested ballots might vary not only from county to county but indeed within a single county from one recount team to another." *Bush*, 531 U.S. at 106.

In their response, Plaintiffs contend that their Equal Protection claim is based on the holding in *Bush v. Gore* (ECF No. 22 at 12 PageID.1607).  Plaintiffs begin by identifying the relevant federal and state statutes.  Plaintiffs points to the federal statute that requires each state to "adopt uniform standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State."  52 U.S.C. § 21081(a)(6). Plaintiffs identify the Michigan statute that sets forth standards for counting and recounting votes, Michigan Compiled Laws § 168.803.  Subsection (2) addresses the use of electronic voting machines and requires the Secretary of State to "issue instructions ... relevant to stray marks to ensure the fairness and uniformity of determinations made under this subsection." Mich. Comp. Laws § 168.803(2).

Plaintiffs then explain the factual basis for their Equal Protection claim.  Plaintiff assert "on information and belief" that the electronic voting system software "allows the clerk to

choose the standard for a 'mark' by setting the pixel count range including the minimum number of pixels within the area to be marked during voting."  (ECF No. 22 at 14 PageID.1609).  Plaintiff contend the legislature has not set a uniform standard for a pixel count.  Without a uniform standard, the voting machines arbitrarily adjudicate the marks to determine voter intent.

The Court concludes that Plaintiffs have failed to plead sufficient facts to state an Equal Protection claim for which this Court could grant relief.  The Equal Protection claim Plaintiffs describe in their response has no basis whatsoever in the factual allegations in the complaint.  In the complaint, Plaintiffs decry the lack of certification of voting machines. The allegations in the complaint in no way put Defendants on notice about a claim arising from the lack uniformity in pixel-count standards from county to county.  Plaintiffs have not pled any facts to support the conclusion that County Clerks have failed to use a uniform pixel count setting on the electronic voting machines.  Plaintiffs have amended their complaint once already and have not sought leave to amend the complaint a second time.

Although Plaintiffs do not mention any of the certification concerns in the portion of their response addressing the Equal Protection claim, the Court has reviewed the complaint for that purpose.  The certification concerns issues set forth in the complaint do not contain sufficient facts to state an Equal Protection claim.  Taking the allegations in the complaint as true, the Court assumes many counties in Michigan will not use certified machines (or software) for the 2022 election.  Plaintiffs' allegations fail to connect the use of uncertified machines to vote dilution.  Plaintiffs do not explain in any coherent manner how the use of uncertified machines causes unauthorized ballots to be cast or counted or authorized ballots

to be discounted or flipped.  At best, Plaintiffs have pled that the use of uncertified machines violates HAVA (a federal statute) and state statutes.  But, "HAVA does not itself create a private right of action" such that all of its provisions may be enforce through 42 U.S.C. § 1983.  *Sandusky Cty. Democratic Party v. Blackwell*, 387 F.3d 565, 572 (6th Cir. 2004).

### B.  52 U.S.C. § 20701

Defendants request dismissal of any claims arising from alleged violations of 52 U.S.C. § 20701 and other record retention statutes.  Defendants argue that the statutes do not permit private enforcement.  Plaintiffs acknowledge that they do not have a claim under the statute (ECF No. 22 at 15 PageID.1610).  Plaintiffs explain that the issue of records retention may become relevant for the audit trail of the 2020 election (*id.* PageID.1610-11).  Plaintiffs do not have standing in this lawsuit to pursue any claims related to the 2020 election.

### C.  Eleventh Amendment

Defendants argue that the Eleventh Amendment grants sovereign immunity to states from lawsuits filed in federal courts.  Defendants argue that most of the requested relief is properly characterized as retrospective, not prospective.  Plaintiffs concede that the amendment prohibits claims for money damages and insists that the amendment does not preclude lawsuits seeking equitable relief.

The Eleventh Amendment recognizes the sovereign immunity of the fifty states and provides that federal courts may not exercise authority over lawsuits brought against one the states.  U.S. Const. amend. XI; *Green v. Mansour*, 474 U.S. 64, 68 (1985).  "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The holding in *Ex parte Young* created

an exception for lawsuits that challenge the constitutionality of a state official's actions that enforce an unconstitutional state statute.[10]  *Green*, 474 U.S. at 68.  Although the lawsuit is brought against the office holder in his or her official capacity, the lawsuit is not one against the State itself because the unconstitutional state statute is void.  *Green*, 474 U.S. at 68; *see Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.  This legal fiction where the actions of a state official are not actions of the State permits plaintiffs to seek prospective but not retrospective relief.  *Green*, 474 U.S. at 68; *Pennhurst State Sch. & Hosp.*, 465 U.S. at 105-06.  Under the *Young* exception, a federal court may enjoin a state official in his or her official capacity from prospectively violating a federal statute or our Constitution.  *Michigan Corr. Org. v. Michigan Dept. of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014).

The Eleventh Amendment affects this lawsuit at least three ways.  First, the Eleventh Amendment precludes any relief for damages.  *See Boler v. Earley*, 865 F.3d 391, 409-10 (6th Cir. 2017).  Plaintiffs concede this conclusion.  Second, the Eleventh Amendment precludes this Court from granting any relief related to or arising from a violation of state law.  *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106.  Throughout the complaint, Plaintiffs allege Defendants are not following requirements in state statutes.  Plaintiffs are not alleging that Defendants are enforcing an unconstitutional state statute, rather Plaintiffs allege Defendants are not following or enforcing state law.  (*See, e.g.,* Compl. ¶¶ 21-27 PageID.100-01).  Plaintiffs attempt to tie the state law requirements to a federal statute, HAVA, do not

---

[10]      *Ex parte Young* did not create a cause of action, rather the holding "provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else." *Michigan Corr. Org.*, 774 F.3d at 905 (italics in original).

resolve the problem for Plaintiffs.  HAVA does not create a private right of action.  And,

Plaintiffs cannot use the federal constitution or 42 U.S.C. § 1983 to force or compel

Michigan to follow its own law.  *See Wozniak v. Adesida*, 932 F.3d 1008, 1011 (7th Cir.

2019).  Accordingly, the Eleventh Amendment bars any of Plaintiffs' claims arising from a

violation of state law.

Third, if any Plaintiff had standing to maintain a claim arising from the 2020 election,

the Eleventh Amendment would prohibit the retrospective equitable relief sought in this

lawsuit.  More specifically, the Eleventh Amendment prohibits this Court from ordering

Defendants to decertify and redo the 2020 election.  Plaintiffs' request for a writ of

mandamus compelling Defendants to decertify the election and rerun the 2020 election

would not be prospective relief designed to prevent on-going violations of law but

retrospective relief designed to remedy a past injury.  *See T.M. v. DeWine*, 49 F.4th 1082,

1088 (6th Cir. 2022); *see also Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("Consequently,

*Young* has been focused on cases in which a violation of federal law by a state official is

ongoing as opposed to cases in which federal law has been violated at one time or over a

period of time in the past, as well as on cases in which the relief against the state official

directly ends the violation of federal law as opposed to cases in which that relief is intended

indirectly to encourage compliance with federal law through deterrence or directly to meet

third-party interests such as compensation.").

## D.  Declaratory Relief

Defendants argue Plaintiffs' request for declaratory relief (Compl.  ¶¶  107-19

PageID.116-17) should be dismissed.  Defendants reason the requested relief is not ripe

because the multiple requests for declarations do not arise from any dispute or challenge connected to the acts of the Defendants.  For example, Plaintiffs seek a declaration that the Help American Vote Act of 2002 is constitutional.

When there is a "case of actual controversy," the Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party...."  28 U.S.C. § 2201(a).  The Act does not provide an independent cause of action. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 650-51 (6th Cir. 2007); *accord City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878-79 (9th Cir. 2022) (collecting cases).  Rather, the Act "enlarged the range of remedies available in the federal courts...."  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).  A plaintiff may seek relief under the Declaratory Judgment Act only when the plaintiff has a distinct "judicially remediable right."  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).[11]

The Court will dismiss all requests for declarations of federal law.[12]  For those requested declarations, Plaintiffs have not established that any dispute relevant to the requested declarations exists between the parties.  And, Plaintiffs have not identified that they have a cause of action under HAVA, which does not permit private enforcement of the disputes raised in this lawsuit.

---

[11]      This may be a sufficient reason to dismiss all requests for declaratory relief because the Court has concluded that Plaintiffs have not pled a viable cause of action.

[12]      *E.g.,* PageID.115-16: ¶ 107 (declare that HAVA is constitutional); ¶ 108 (declare that HAVA established the US Election Assistance Commission); ¶ 109 (declare that the US Election System has adopted the Voluntary Voting Systems Guidelines); ¶ 114 (Election Assistance Commission has the authority to accredit laboratories for testing voting systems).

The Court will dismiss all requests for declarations about the 2020 election.[13] Declarations about the 2020 election are functionally retrospective relieg and would not be consistent with the *Young* exception to the immunity afforded by the Eleventh Amendment.

The Court declines to exercise authority over Plaintiffs remaining requests for declarations.  The remaining requests for declarations can fairly be characterized as issues concerning state law.  Plaintiffs have not established that any dispute about these requested declarations exists between the parties.  Even when a plaintiff establishes that a controversy exists between the parties, district courts have discretion whether to exercise the authority granted under the statute.  *Grand Trunk Western R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984).

In light of the manner in which the Court has resolved Defendants' motion up to this point, whatever dispute remains between the parties concerning obligations under state law should not be resolved by this Court.  To recap, the Court has concluded that only Plaintiff Brandenberg (as a candidate) and Plaintiff Olson (as a township official) have standing and their standing is limited to concerns about the 2022 election.  The complaint does not plead sufficient facts to state an Equal Protection claim based on concerns about the electronic voting machines to be used in the 2022 election.  The Eleventh Amendment prohibits this Court from granting relief to Plaintiffs for alleged violations of state law.  Under these circumstances, making declarations about state law would not settle any controversy between the parties.  At best, the declarations would serve as some procedural fencing for a future

---

[13]      *E.g.*, PageID.116-17: ¶¶ 115-118.

dispute.  Because of a lack of a federal cause of action, any concerns about the various state statutes outlining requirements for the use of electronic voting machines should first be resolved in the state courts.

## IV.

This lawsuit appears to be yet another brought by misguided individuals who reject the outcome of the 2020 presidential election.  Many of Plaintiffs' allegations rely on tired examples of alleged malfeasance that have been debated for several years, most without proof or resolution.  The wrinkle added to this lawsuit concerns the use of allegedly uncertified voting machines.  Plaintiffs, however, have not pled facts to connect the use of uncertified voting machines to a concrete and particularized injury sufficient to maintain a cause of action.  And, Plaintiffs have not pled facts to connect the use of uncertified voting machines to vote dilution.  To the extent Plaintiffs find fault with Defendants for failing to follow state law, the Eleventh Amendment precludes this Court from exercising authority over the claim.  Accordingly, the Court will grant Defendants' motion to dismiss.

## ORDER

For the reasons provided in the accompanying Opinion, the Court **GRANTS** Defendants' motion to dismiss (ECF No. 17).  **IT IS SO ORDERED.**

Date:    August 2, 2023                              /s/  Paul L. Maloney
                                                       Paul L. Maloney
                                                       United States District Judge